1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF MINNESOTA
2
       ------------------------------------------------------------
3                                    )
       United States of America,     )   File No. 17-CR-157
4                                    )            (MJD/HB)
               Plaintiff,            )
5                                    )
       vs.                           )   St. Paul, Minnesota
6                                    )   September 21, 2017
       Todd Seaver Knutson,          )   10:26 a.m.
7                                    )
               Defendant.            )
8      ------------------------------------------------------------

9
                   BEFORE THE HONORABLE HILDY BOWBEER
10           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

11                   **(PRETRIAL MOTIONS HEARING)**

12
       APPEARANCES
13      For the Plaintiff:        U.S. Attorney's Office
                                  ANDREW S. DUNNE, AUSA
14                                600 U.S. Courthouse
                                  300 South Fourth Street
15                                Minneapolis, Minnesota 55415

16      For the Defendant:        JOHN C. BRINK, ESQ.
                                  Suite 1008
17                                310 Fourth Avenue South
                                  Minneapolis, Minnesota 55415
18
       Court Reporter:           LORI A. SIMPSON, RMR-CRR
19                                Suite 146
                                  316 North Robert Street
20                                St. Paul, Minnesota 55101

21

22

23

24
           Proceedings recorded by mechanical stenography;
25     transcript produced by computer.

**I N D E X**

PAGE

GOVERNMENT'S WITNESSES:

**MICHELE VLASAK**
   Direct Examination by Mr. Dunne                    11
   Cross Examination by Mr. Brink                     14


DEFENDANT'S WITNESSES:

**TODD KNUTSON**
   Direct Examination by Mr. Brink                    29
   Cross Examination by Mr. Dunne                     31


GOVERNMENT'S EXHIBITS                                REC'D
   1                                                    9
   2                                                    9
   3                                                    9
   4                                                    9
   6                                                   13

1              **P R O C E E D I N G S**

2                   **IN OPEN COURT**

3       (Defendant present)

4           THE COURT:  Thank you for your patience.  And

5   thank you for running up from your last hearing.

6           I am Magistrate Judge Hildy Bowbeer and we are in

7   court this morning for a hearing on a number of motions

8   filed in the matter of United States of America vs. Todd

9   Seaver Knutson.  This is criminal matter number 17-157.

10          Let me start by getting appearances first on

11  behalf of the United States.

12          MR. DUNNE:  Andrew Dunne, D-u-n-n-e, on behalf of

13  the United States.  Good morning, Your Honor.

14          THE COURT:  Good morning.  And on behalf of

15  Mr. Knutson?

16          MR. BRINK:  John C. Brink for Mr. Knutson.

17          THE COURT:  And the record will reflect that

18  Mr. Knutson is in court with us this morning as well.

19          What I want to do is go first through the list of

20  motions that I have in front of me to make sure that my

21  inventory, if you will, is complete and then I'll ask you

22  about whether there are any updates to those, perhaps

23  anything that's been narrowed or eliminated because of

24  further consideration, and then we'll go from there to any

25  testimony that may need to be required in connection with

1          the dispositive motions.

2                   So first what I have is the government's motion,

3          Docket No. 25, for discovery pursuant to Federal Rules of

4          Criminal Procedure 16(b), 12.1, 12.2, and 26.2.  Docket

5          No. 27 -- and actually, all of the rest of these are

6          Defendant Knutson's motions.  Docket No. 27 is motion for

7          disclosure of any evidence that is exculpatory, mitigates

8          punishment, or is relevant to the impeachment of witnesses;

9          28, motion for disclosure of the identity of all informants

10         who were witnesses to or participants in the crimes charged

11         in the indictment; 29, motion for disclosure of any

12         information provided by informants or trial witnesses, their

13         criminal records, and the incentives provided to them to

14         provide information or testimony; No. 30, motion for early

15         compliance with the Federal Rules of Criminal Procedure and

16         the Jencks Act; 31, motion to preserve and for disclosure of

17         copies of any handwritten or tape-recorded notes of

18         interviews, debriefings, or surveillances; 32, motion for

19         the production of any informants whose identity is disclosed

20         for the purpose of conducting pretrial interviews; 33,

21         motion for disclosure of all grand jury testimony relating

22         to this investigation.  And I will just note for the record

23         that the docket numbers on the motions I've just finished

24         listing are the ones that are nondispositive motions.

25                   Going on to the dispositive motions, Docket

```
 1    No. 34, Defendant Knutson's motion to suppress all

 2    electronic surveillance evidence and any evidence derived

 3    therefrom; 35, motion to suppress any evidence obtained as a

 4    result of illegal searches or seizures; 36, motion to

 5    suppress any evidence obtained as a result of any illegal

 6    interrogation; 37, motion to suppress any evidence obtained

 7    as a result of any illegal identification procedures; and

 8    45, motion to suppress search warrant evidence and request

 9    for an evidentiary Franks hearing.

10            Those are the motions I have in front of me that

11    are dispositive in nature.  So let me ask first:  Have I

12    left anything out?  Did any of you think there were other

13    motions on the calendar for today that I did not identify?

14            MR. DUNNE:  The only omission, Your Honor, and

15    it's not a motion, but Mr. Brink filed, and I think it's

16    Docket No. 26, a demand for discovery and it was really a

17    letter to the government with the demand.  It was filed on

18    ECF and I have replied to that demand in our responsive

19    papers, but it isn't a motion.

20            THE COURT:  Got it.  The Court notes that and

21    notes that you've represented that you have responded to it.

22            Mr. Brink, anything that you noted that I left

23    out?

24            MR. BRINK:  Not from Mr. Knutson, Your Honor.

25    Thank you.
```

1         THE COURT:  All right.  Thank you.  Now, with

2    respect to the nondispositive motions, I have obviously

3    reviewed both the motions and the responses filed.  Are

4    there any updates to those responses by way of results of

5    meeting and conferring or anything else?

6         MR. BRINK:  Not from Mr. Knutson, Your Honor.

7         MR. DUNNE:  Not on behalf of the United States.

8         THE COURT:  All right.  Then I will -- and did

9    either of you want to add anything in terms of argument on

10   those motions?

11        MR. BRINK:  No, Your Honor.  Thank you.

12        MR. DUNNE:  No, Your Honor.

13        THE COURT:  All right.  Then I will take those

14   motions under advisement and will issue a ruling in due

15   course.

16        Let's turn, then, to the dispositive motions, 34,

17   35, 36, 37, and 45.  I understand, Mr. Dunne, that you have

18   at least one witness with respect to those motions, but let

19   me ask first:  Is there anything by way of update or

20   narrowing of the issues that the two of you have discussed

21   in the meantime?

22        MR. DUNNE:  A little bit, Your Honor.  I will

23   point the Court's attention to our response to the

24   defendant's pretrial suppression motions, page 9 and it's

25   number 3(b) --

1          THE COURT:  Um-hmm.

2          MR. DUNNE:  -- and page 8, 3(a) is primarily what

3    I will want -- page 8, numeral 3(a), and they were post

4    arrest statements made by Mr. Knutson on June 8th at the

5    lockup in the U.S. Marshal's holding cell area.  I have

6    discussed with Mr. Brink and we are representing to the

7    Court that it is not the intention of the United States to

8    introduce any of those statements at trial.

9          THE COURT:  All right.  In light of that,

10   Mr. Brink, my inclination would be to deny that part of your

11   motion as moot.

12          MR. BRINK:  I think that would be appropriate.

13          THE COURT:  All right.  Very well.  Or I suppose

14   to recommend that Judge Davis deny that part of the motion

15   as moot.

16          All right.  Thank you for that clarification.

17   Anything further by way of narrowing or clarification or

18   issues that are now mooted by virtue of your conversations

19   among yourselves?

20          MR. DUNNE:  No, Your Honor.

21          THE COURT:  Nothing further?

22          MR. BRINK:  No, Your Honor.  Thank you.

23          THE COURT:  Then I know, Mr. Dunne, as I say,

24   you've got at least one witness, but Mr. Brink, let me ask

25   whether you wanted to give me any further overview beyond

1  what's in your papers before we turn to any evidence-taking

2  today.

3          MR. BRINK:  No, Your Honor.  We can go right to

4  it.

5          THE COURT:  All right.  Very well.  Mr. Dunne,

6  please call your first witness.

7          MR. DUNNE:  Your Honor, what I want to do is just

8  with regards to the motion to suppress evidence as a result

9  of any search and seizure, the United States has four

10 exhibits and they are the four search warrants.

11         Exhibit 1 is the Ramsey County District Court

12 Application for Search Warrant and Search Warrant for

13 890 Arkwright Street and Mr. Knutson.

14         Exhibit Number 2 is the Ramsey County District

15 Court Application for Search Warrant and Search Warrant for

16 the DNA buccal swab of Mr. Knutson.

17         Exhibit 3 is the Ramsey County District Court

18 Application for Search Warrant and Search Warrant for the

19 Samsung smart phone.

20         And Exhibit 4 is the United States District Court

21 Application for Search Warrant, Affidavit of Matthew Parker,

22 and Search and Seizure Warrant for the Bunker Hills security

23 video recorder.

24         Those four exhibits were attached to the

25 government's response previously provided to the defense and

1    I'll just move their admission and provide those to the

2    Court at this point.

3              THE COURT:  A couple of things.  First, to the

4    exhibits themselves, any objections, Mr. Brink?

5              MR. BRINK:  No, Your Honor.  Thank you.

6              THE COURT:  Those exhibits will be admitted.

7              Now, as you no doubt have noted, the fourth of

8    those, the one search warrant that was signed by a judge in

9    this district, was signed by me and that means that it is

10   not appropriate for me to consider the motion to suppress in

11   connection with that particular search warrant.

12             Accordingly, I will be referring that motion to

13   one of my colleagues and they will be, whoever that is, will

14   be issuing a Report and Recommendation with respect to that

15   motion.

16             Now, it's my understanding that none of the

17   testimony you anticipate introducing today, Mr. Dunne, goes

18   specifically to that warrant; is that correct?

19             MR. DUNNE:  That's correct, Your Honor.

20             THE COURT:  All right.  So those four exhibits are

21   admitted, but just so everybody understands, one of the

22   other magistrate judges will be considering that probable

23   cause in connection with that last search warrant.

24             All right.  Anything else by way of introduction?

25             MR. DUNNE:  Well, the only -- again, so it's clear

1    to the Court, the motion to suppress statements, as the

2    government viewed the evidence in the case there are three

3    separate statements and that's put out on pages 8, 9, and 10

4    of our response.

5            It's post arrest statements that were made in the

6    Marshal's lockup, which the government has represented it

7    has no intention of introducing those statements at trial.

8            3(b) concerns statements made by Mr. Knutson at

9    Sherburne County during an incident that led to an

10   altercation between Mr. Knutson and several correctional

11   officers.  Obviously those are voluntary statements, not the

12   product of any interrogation.  However, the government is

13   representing and has represented in those papers that it has

14   no intention of introducing those statements at this time at

15   trial.

16           THE COURT:  So that leaves --

17           MR. DUNNE:  That leaves the jail calls and we do

18   have a witness for that.

19           THE COURT:  All right.  Very well.  Okay.

20   Anything further by way of overview?

21           MR. DUNNE:  No, Your Honor.

22           THE COURT:  Mr. Brink, anything further from you

23   by way of overview or shall we move to Mr. Dunne's witness?

24           MR. BRINK:  We can go ahead.

25           THE COURT:  Thank you.

1          MR. DUNNE:  Thank you, Your Honor.  And I want to

2     make sure that I pronounce the name correctly, not make her

3     an heir to the Vlasic pickle.  It's Michele Vlasak.

4          THE COURT:  All right.  Ms. Vlasak, please step

5     forward.  Please raise your right hand.

6        (Witness sworn)

7          THE COURT:  Please be seated.  There is water up

8     there if you want to pour yourself a cup.

9          THE WITNESS:  Thank you.

10          THE COURT:  I will let you get settled in for a

11     moment.  Please state your full name for the record and

12     please spell your last name.

13          THE WITNESS:  It's Michele, that's with one "l,"

14     Nicole and it's Vlasak and it's V, as in Victor, l-a-s-a-k.

15          THE COURT:  Very well.  Please go ahead.

16                          **(Michele Vlasak)**

17                          **DIRECT EXAMINATION**

18     BY MR. DUNNE:

19     Q.  How are you currently employed?

20     A.  I am currently employed with Sherburne County Sheriff's

21     Office.

22          THE COURT:  I am going to ask you to move forward

23     and get closer to your microphone.  I am having a little

24     trouble hearing you and I am guessing our court reporter was

25     as well.  Try that now.

```
1              THE WITNESS:  Sherburne County Sheriff's Office.

2    BY MR. DUNNE:

3    Q.  Okay.  And do you have a title?

4    A.  I am an investigator.

5    Q.  Okay.  And as part -- how long have you been an

6    investigator for Sherburne County?

7    A.  I've been an investigator for three years.

8    Q.  And your current station, is that at the jail?

9    A.  I'm assigned to the jail, correct.

10   Q.  And what are your duties at the jail?

11   A.  I assist agencies with cases.  I monitor phone calls,

12   monitor mail, video visitations.  I deal with any criminal

13   activity that occurs in the jail.

14   Q.  From performing those duties the last three years at the

15   Sherburne County Jail, are you familiar with the rules and

16   regulations of the jail in connection with telephone calls

17   by inmates?

18   A.  Yes.

19   Q.  Can you explain what those rules and regulations are to

20   the Court.

21   A.  Inmates' phone calls are subject to being monitored and

22   recorded unless it is an attorney call and that's

23   privileged.  Those do not get recorded.

24              MR. DUNNE:  Your Honor, may I approach the

25   witness?
```

```
 1                   THE COURT:  Yes.

 2    BY MR. DUNNE:

 3    Q.  I want to hand you what's been previously marked for

 4    identification purposes as Government Exhibit 6 and ask you

 5    to take a look at that.  What is Government Exhibit 6?

 6    A.  This is the inmate handbook.

 7    Q.  And so the record is clear, it is not the entire

 8    handbook, it is excerpts from the handbook that you brought

 9    to me this morning?

10    A.  Correct.

11    Q.  And is this -- tell me what the purpose of this inmate

12    handbook, Government Exhibit 6, is.  Is that provided to

13    inmates?

14    A.  Yes.

15    Q.  In its entirety?

16    A.  Yes.

17    Q.  When?

18    A.  When they come into our facility.

19                   MR. DUNNE:  Your Honor, the government would offer

20    Government Exhibit 6.

21                   THE COURT:  Any objection?

22                   MR. BRINK:  No objection for the purpose of this

23    hearing, Your Honor.

24                   THE COURT:  Understood.  Exhibit 6 will be

25    admitted.
```

1     BY MR. DUNNE:

2     Q.  I want to turn your attention on Government Exhibit 6 to

3     page 5, which happens to be the third page of that exhibit,

4     and turn your attention to the third full -- second full

5     paragraph from the bottom of the sheet that begins, "If your

6     family...."  Do you see that?

7     A.  Yes.

8     Q.  Could you read the last sentence of that paragraph.

9     A.  "Telephone conversations are recorded with the exception

10    of your calls to your attorney."

11    Q.  In addition to these written notifications regarding

12    inmate telephone calls, are there any other notifications

13    that are made to inmates concerning the monitoring and

14    recording of their telephone calls from Sherburne County?

15    A.  Yes.

16    Q.  And what are those?

17    A.  When they make a phone call there is a recording at the

18    beginning that states that the phone call is subject to

19    recording and monitoring, and you cannot bypass that.

20              MR. DUNNE:  Your Honor, I have nothing further for

21    this witness.  Thank you.

22              THE COURT:  Cross examination, Mr. Brink?

23                        **CROSS EXAMINATION**

24    BY MR. BRINK:

25    Q.  My client tells me, ma'am, that this is not passed out

1   to the inmates, that they have to ask for it if they want to

2   see it.

3   A.   It's given to them during their orientation.

4   Q.   To every prisoner?

5   A.   To all the inmates.  It is also available to them if

6   they lose it.  They can ask the CO if they want another

7   copy.

8   Q.   How many pages is this document?

9   A.   The entire document?

10  Q.   Yes.

11  A.   I don't have it with me.  I just have part of it.

12  Q.   About?

13  A.   Twenty pages.

14  Q.   And it's small print, single-spaced?

15  A.   Yes.

16  Q.   Does anybody explain this stuff to these guys?

17  A.   During orientation.

18  Q.   When does orientation take place?

19  A.   When they're getting booked in.

20  Q.   How long does it last?

21  A.   I wouldn't know.

22  Q.   You don't know?

23  A.   I'm not part of that part of it, no.

24  Q.   But you believe that it happens?

25  A.   Well, I'm aware that it happens.

1    Q.  How do you become aware that it happens if you're not

2    familiar with it?

3    A.  Because it's been explained to me.

4            MR. BRINK:  Those are all the questions I have.

5    Thank you.

6            THE COURT:  All right.  Anything by way of

7    redirect?

8            MR. DUNNE:  Nothing further, Your Honor.

9            THE COURT:  All right.  Then you may step down.

10           MR. DUNNE:  Your Honor, the government rests.

11           THE COURT:  All right.  And Mr. Brink, did you

12   have any witnesses to call?

13           MR. BRINK:  Yes.  Agent Raichert.

14           MR. DUNNE:  Well, Your Honor, I'm going to object

15   to calling Officer Raichert if it's for the purposes of the

16   Franks hearing.

17           THE COURT:  Is this in connection with your

18   request for a Franks hearing?

19           MR. BRINK:  It is, Your Honor.  Traditionally we

20   have to establish -- you have to make a preliminary showing

21   to get the Franks hearing and traditionally that showing is

22   made at this motions hearing, and my purpose in calling

23   Agent Raichert is to establish that preliminary showing that

24   would entitle us to a Franks hearing.

25           And by way of explanation, this case is a

1  little -- has a little bit different twist on the <u>Franks</u>

2  issue.  Usually it's an allegation that some statement is

3  intentionally or recklessly incorrect or false in the

4  application for the search warrant.  We do have that in this

5  case, but the interesting twist in this case is we also have

6  a failure to investigate, which complicates the matter and

7  can be a basis for the granting of a <u>Franks</u> hearing.

8         By way of explanation, there is no tie between the

9  defendant and the house at 890 Arkwright.  There were a

10  couple of pieces of mail found there, but they were

11  addressed to him at a location in Savage, Minnesota, not at

12  890 Arkwright.

13         It also turns out that if the police had gone

14  to the Ramsey County authorities to find out who owned

15  890 Arkwright, they would have found that it was managed by

16  a company called Home Haven Homes and we have a lease

17  agreement that leased it on April 11th of 19 -- of 2017 to a

18  woman named Kelly Walters.

19         So not only is the defendant not on the lease, the

20  mail that was found there was addressed to him in Savage,

21  Minnesota, and all the police had to do to determine the

22  tenancy was to contact the homeowner and they would have --

23  with a couple of phone calls they'd have realized that there

24  was no tie between Mr. Knutson to the tenancy of that

25  dwelling.

1          There's also some issues around a statement in the

2     warrant in which Officer Raichert makes the statement to the

3     effect, quote, My investigation revealed that Todd Knutson

4     is the tenant of this dwelling.  And it is impossible for

5     his investigation to have revealed that, at least based on

6     what we know, because the tenant on the lease was this woman

7     named Kelly Walters.

8          So we have that statement that we claim is false

9     in which he said that his investigation determined that Todd

10    Knutson was the tenant and then we have the failure to make

11    even the most meager attempt to find out who lived there by

12    calling the Ramsey County authorities.

13         And then we have quotes by Agent Raichert or

14    Officer Raichert regarding a CD, which I'm given to

15    understand is a cooperating defendant.  And a cooperating

16    defendant by definition is working -- trying to work his way

17    out of his own problem as a cooperator and because he's a

18    defendant, or she.

19         The other informant is listed as a CI, which I

20    assume means confidential informant, who frequently are

21    working their way out of problems and anxious to please the

22    police.

23         And as to both of these individuals there is no

24    statement of previous reliability, no statement to evaluate

25    the credibility of their information, the information being

1   that Todd Knutson was selling methamphetamine out of this

2   house.  But there is nothing going to their previous

3   reliability, historical reliability, or the credibility of

4   the information that they were supplying.

5          Each was shown a single photograph and, according

6   to Agent Raichert, identified the photograph as being that

7   of Mr. Knutson.  That's obviously a problem because a single

8   photograph is obviously suggestive and gives rise to a

9   substantial likelihood of misidentification, as the Supreme

10  Court has held many times.

11         So that in a nutshell is what the situation is and

12  my intent would be to lay that foundation by asking Officer

13  Raichert if he indeed made the statement that Todd Knutson

14  was the tenant and if he did any investigation at all to

15  find out who lived in this house.

16         And the final reason this is important, Your

17  Honor, is that the probable cause in the search warrant

18  application is not directed at the real estate, it's

19  directed at Mr. Knutson.

20         And it is his nexus to the property -- if any

21  probable cause is to be found, it would have to be found

22  because of his nexus to the property.  If he had no nexus to

23  the property, there's no reason -- if he didn't have a nexus

24  to the property, there's no reason to search the property.

25         So that, briefly, is where I want to go.

1          THE COURT:  All right.  I appreciate the proffer.

2     Let me ask Mr. Dunne to respond.

3          MR. DUNNE:  Your Honor, I appreciate Mr. Brink's

4     arguments.  However, he has conflated not only facts, but

5     he's also conflated the law.

6          If you look at Delaware v. Franks, the Supreme

7     Court has required that the defendant must show that the

8     affiant on the warrant used a deliberate falsehood or showed

9     reckless disregard for the truth.  That's the burden that

10    must be shown in order to get a Franks hearing.

11         But it goes further.  The Supreme Court said if

12    you take the offending statement out and the remainder of

13    the averments in the affidavit are sufficient to establish

14    probable cause, then you don't get a Franks hearing.  That's

15    what the Supreme Court has said.  There's nothing about a

16    failure to investigate.  It's a deliberate falsehood on the

17    part of the affiant.

18         Now, the statement here that Mr. Brink contends is

19    false is:  "Through the investigation I was able to identify

20    the tenant of 890 Arkwright as Todd Seaver Knutson."  That's

21    the offending statement.

22         Now, if you look in the affidavit, that statement

23    comes in a paragraph where the affiant then goes on to

24    explain to the issuing judge how he identified Todd Seaver

25    Knutson as the tenant of 890 Arkwright.  It's hard to

1     conceive of someone deliberately misleading a judge when the

2     affidavit itself goes on to explain the steps that were

3     taken.

4               Mr. Brink also conflates the word "tenant" with

5     owner or named leaseholder.  Tenant -- the common vernacular

6     of "tenant" from *Webster's Dictionary* is dweller, occupant,

7     inhabitant temporarily of property.

8               That's exactly what Officer Raichert said in the

9     affidavit and it's exactly what his investigation showed.

10    He talked to two separate people, a confidential informant

11    and a cooperating defendant in an unrelated case, and they

12    both independently and separately said they bought

13    quantities of methamphetamine from Todd Seaver Knutson at

14    890 Arkwright.  They both independently and separately said

15    they were there and observed firearms in his home.  They

16    observed surveillance cameras both inside and outside his

17    home.  They both independently and separately said there are

18    stolen Dodge Charger parts in the garage of his home.

19              And then within 24 hours of obtaining the warrant,

20    Officer Raichert sent in the informant into 890 Arkwright

21    Street and immediately upon exiting that address advised the

22    officer that Todd Seaver Knutson let the informant into the

23    residence.  That is the basis for his statement "Through the

24    investigation I was able to identify the tenant of

25    890 Arkwright as Todd Seaver Knutson."  It's supported by

1    everything else in the warrant.  Now, that averment,

2    factually correct by Officer Raichert, was also corroborated

3    by evidence the officers obtained following the execution of

4    the search warrant.

5            And I must say this Kelly Walter thing is

6    interesting because I suppose that what Mr. Brink is saying

7    is that the failure to call the owner, to look at the lease

8    and to find out who the named leaseholder is a failure to

9    investigate.  Of course, nowhere in the affidavit does it

10   say owner or named leaseholder.  It says tenant, dweller,

11   occupant, inhabitant.

12           Our investigation that I tasked the FBI to do

13   after the indictment disclosed there is no Kelly Walter.

14   It's a fake ID.  It's a fake pay stub.  It's a fake check.

15   There is no named leaseholder of Kelly Walter.  It's all

16   bogus.  The tenant is Todd Seaver Knutson, and that's

17   exactly what Officer Raichert said.

18           It's the position of the United States that

19   Mr. Brink has not met his burden.  And even if you take that

20   one sentence out, there's ample probable cause to support

21   the issuance of the search warrant and that's set forth in

22   page 3 of the government's response to the request for a

23   Franks hearing.  So based upon all of those matters, the

24   government opposes the motion.

25           THE COURT:  All right.

 1             MR. BRINK:  May I make two observations, Your

 2     Honor?

 3             THE COURT:  You may, of course.  Please come to

 4     the podium to do it, though.

 5             MR. BRINK:  With respect to Kelly Walters'

 6     existence or lack of it, if that were the case the police

 7     should have ascertained that and informed the issuing judge

 8     that that was part of the mix in the question whether

 9     probable cause exists to support a search warrant.  They

10     should have said we called the county authorities.  They

11     said this Kelly Walters was the tenant or the occupant or

12     whatever you want to call her.  We checked it out.  It turns

13     out she's not a legitimate tenant.  And then the judge would

14     have had the whole picture rather than just the part that

15     the police chose to show to him.

16             And second, the second point I'd like to make,

17     Your Honor, is I think it's significant that they didn't

18     make any controlled buys.  If they've got these informants

19     going in there, why didn't they come out with some

20     methamphetamine?  They made the claim that Mr. Knutson was

21     selling meth out of that house, but they didn't come out

22     with any.

23             THE COURT:  Thank you.

24             MR. DUNNE:  Your Honor, may I just briefly,

25     briefly respond?  I'm sorry.

1          THE COURT:  Briefly, briefly respond.

2          MR. DUNNE:  I'm sorry.

3          THE COURT:  Come to the podium.

4          MR. DUNNE:  Kelly Walters and then controlled

5     buys.

6          The Kelly Walters part, again, I hope -- maybe I

7     misspoke.  That was not learned by the officers until post

8     indictment.  Okay?  And that is not what the test for Franks

9     is.  It's not what the officers subsequently found; if you

10    can add it to an affidavit, what impact does that have.

11    It's whether or not the statements in the affidavit were

12    deliberately false or showed a reckless disregard for the

13    truth.  And it doesn't.  In fact, that investigation would

14    have added to the probable cause.

15         But that's not the test for Franks.  Franks is

16    just whether that statement in and of itself is deliberately

17    false or showed reckless disregard for the truth; or if

18    excised, is the remaining averments sufficient to show

19    probable cause.  That's what the Supreme Court has guided us

20    for analysis under Franks.

21         And secondly, the controlled buys.  I guess that

22    goes to probable cause, but that's not what was in the

23    warrant.  What the judge has to look at for issuing a

24    warrant is the probable cause that is stated in the

25    affidavit, not what could or could not have been done to add

1    or subtract from it.  It's whether there are false

2    statements and whether there is sufficient probable cause.

3         Whether or not there's sufficient probable cause

4    is traditionally a four-corners review of that affidavit,

5    and that's what we're submitting needs to be done in this

6    case for all of the warrants submitted, and whether or not

7    the statement in isolation or in conjunction with the

8    totality of circumstances is false.  It is not.

9         He has not met his burden and, again, the

10   government respectfully submits that that motion should be

11   denied.

12        THE COURT:  Thank you.  With respect to that part

13   of Docket No. 45, defendant's motion, to the extent that it

14   asks for an evidentiary <u>Franks</u> hearing, I am denying that

15   motion from the bench:

16        Under <u>Franks vs. Delaware</u> a defendant is entitled

17   to an evidentiary hearing if he or she makes a substantial

18   preliminary showing that a false statement knowingly and

19   intentionally or with reckless disregard for the truth was

20   included in the warrant affidavit and if the statement is

21   necessary to the finding of probable cause.

22        To make that substantial preliminary showing the

23   defendant has to point out specifically the portion of the

24   affidavit claimed to be false, and that has been

25   specifically pointed out here.

1       But that has to be accompanied by a statement of

2   supporting reasons and an allegation standing alone is

3   insufficient to make what's described as a difficult

4   preliminary showing by the Eighth Circuit.

5       Here the allegation is that the government

6   included a material false statement in the affidavit because

7   the officer said, "Through the investigation I was able to

8   identify the tenant of XXXX Arkwright Street as Todd Seaver

9   Knutson."

10      But I am concluding that the defendant has failed

11  to make -- has failed to meet the burden of making that

12  showing for a couple of reasons.

13      First, as Mr. Dunne argued and as I conclude from

14  my review of the affidavit as well, the investigation done

15  is described there and the affiant describes information

16  received both from a corroborating defendant and from a

17  confidential informant, separately gained, separately

18  obtained, that although they may not identify Mr. Knutson as

19  the named renter or named leaseholder of that home, it gave

20  the officer plenty of reason to believe and through the

21  officer the issuing court plenty of reason to understand

22  that Mr. Knutson was connected with the premises, that he

23  was often found in the premises, that he was transacting

24  some business from the premises.

25      Whether he was, by some formalistic definition,

1    the leaseholder of record is not the point.  The point is

2    that both of these individuals found him there and that

3    there's nothing here that tells me, even in the offer of

4    proof, that it was knowingly false or recklessly false or

5    incorrect for the officer to conclude and to state in the

6    affidavit that Mr. Knutson was the tenant of the premises.

7           Furthermore, even if that strictly speaking was

8    incorrect, the connection to the premises is what counts

9    here.  And so even if it was incorrect for the officer to

10   conclude from the activities described that Mr. Knutson

11   ought to be described as a tenant as opposed to someone who

12   was there, what counts in the affidavit is the activity

13   being described as taking place on those premises in which

14   Mr. Knutson was playing a part.

15          And so I also conclude that the specific

16   description of Mr. Knutson as the tenant of the premises was

17   not necessary to a showing of probable cause and so for

18   those reasons I am denying the motion for a Franks hearing

19   from the bench.

20          The remainder of the motions to suppress I will,

21   as I said, take under advisement once we have briefing on

22   those motions and that's the next thing we need to get to in

23   this hearing.

24          MR. BRINK:  Excuse me, Your Honor.

25          THE COURT:  Yes, sir.

```
 1              MR. BRINK:  Before we get to briefing, I have one

 2      other witness.

 3              THE COURT:  All right.  And in what connection?

 4              MR. BRINK:  Very brief on the issue of the jail

 5      telephone calls.

 6              THE COURT:  All right.  If you've got a witness in

 7      connection with the jail telephone calls, is this something

 8      that you've discussed with -- you want to call Mr. Knutson

 9      himself?

10              MR. BRINK:  Yes.

11              THE COURT:  All right.

12              MR. BRINK:  Under the protection of Simmons

13      against the United States, which holds that if a defendant

14      gives up his Fifth Amendment right to remain silent in order

15      to secure another right secured to him by the Constitution,

16      nothing he says here can be used against him substantively

17      at trial.

18              THE COURT:  Well, I will want to hear from

19      Mr. Dunne if he's got an alternate view about the protection

20      of Simmons.  Mr. Dunne, do you want to be heard at this

21      point?

22              MR. DUNNE:  No, Your Honor.  I have no objection

23      to Mr. Knutson testifying.

24              THE COURT:  All right.  Very well.  So I am going

25      to have you raise your right hand, Mr. Knutson.  Why don't
```

1    you stand for this.

2        (Defendant sworn)

3            THE COURT:  Please be seated.  State your full

4    name, please, making sure you're speaking into the

5    microphone and spell your last name.

6            THE WITNESS:  Todd Seaver Knutson, K-n-u-t-s-o-n.

7            THE COURT:  Mr. Brink, go ahead.

8            MR. BRINK:  Thank you.

9                        **(Todd Knutson)**

10                       **DIRECT EXAMINATION**

11   BY MR. BRINK:

12   Q.  Mr. Knutson, you're the defendant in this matter,

13   correct?

14   A.  Yes.

15   Q.  I'm showing you Government's Exhibit 6, which is an

16   excerpt -- it's a cover and an excerpt from the Sherburne

17   County Jail inmate handbook.  Have I described that

18   accurately?

19   A.  Yes.

20   Q.  And it says on page 5, it gives some instructions for

21   prisoners to make --

22            THE COURT:  Actually, I'm going to ask you -- why

23   don't you use my copy so that he can follow along, but I

24   would prefer that you question from the podium so that we

25   make sure we've got a good recording into the microphones.

```
 1    BY MR. BRINK:

 2    Q.  Just read that last sentence of that paragraph.

 3              THE COURT:  If you would like to use my copy --

 4              MR. BRINK:  That's okay.

 5              THE COURT:  -- so you've got something to follow

 6    along?

 7              MR. BRINK:  Thank you.

 8              THE WITNESS:  Just the last sentence?

 9    BY MR. BRINK:

10    Q.  Yeah.

11    A.  "Telephone conversations are recorded with the exception

12    of your calls to your attorney."

13    Q.  Did you receive this inmate handbook?

14    A.  No.

15    Q.  Have you ever seen it before today?

16    A.  No.

17    Q.  So you did not have that information in this form of

18    Exhibit 6?

19    A.  No.  When you come into the intake, the only thing they

20    do is they play a video.  They've got a video about shower

21    policies, lock-in policies, everything else.  The handbook

22    isn't handed out anymore.  Everything is on the video.  I

23    never even watched the video.  When I came in I was trying

24    to get a phone call -- Officers, let me make a phone call --

25    let alone got a handbook on the situation.
```

1          MR. BRINK:  Those are the questions I have, Your

2     Honor.  Thank you.

3          THE COURT:  Mr. Dunne.

4          MR. DUNNE:  Thank you, Your Honor.

5                      **CROSS EXAMINATION**

6     BY MR. DUNNE:

7     Q.  Mr. Knutson, before each call that you made at the jail

8     isn't there a recording advising you that the call is

9     subject to monitoring and recording?

10    A.  I mean, I believe so.  I listen to the part where it

11    tells me how much money I got and I just kind of -- I'm

12    stressed out in there.  I mean, I may have heard something

13    on there.  I don't really listen to it.  I dial my

14    information in and I wait a minute.  It takes a minute for

15    the calls to go through.

16    Q.  Are you done?

17    A.  Yeah.  You asked me a question.  I was just responding,

18    sir.

19    Q.  I was just asking if you are done testifying, sir.  Are

20    you done testifying?

21    A.  Okay.

22    Q.  Are you?

23    A.  Are you done with the questions?  Yes.

24    Q.  No, I'm not done with the questions.

25                THE COURT:  Let me intervene.  I think the

1    question was:  Did you finish what you wanted to say in

2    response to Mr. Dunne's question just now?

3              THE WITNESS:  Yes, ma'am.

4              THE COURT:  All right.  Then Mr. Dunne.

5    BY MR. DUNNE:

6    Q.  Mr. Knutson, let me repeat the question.  Isn't it true

7    that before each telephone call that you made or received at

8    the Sherburne County Jail there was a recording advising you

9    that your calls are subject to monitoring and recording?

10   A.  I didn't pay any attention to it and I don't receive

11   calls.

12   Q.  So you don't know; is that what your testimony is?

13   A.  Yes, sir.

14   Q.  Okay.  Isn't it true that in one of your calls you told

15   the person on the other end, and I quote, I can't talk about

16   it over the jail phones because they're recorded?

17   A.  Yes.  I was just talking about, you know, usually jail

18   phones are recorded, but Sherburne County I wasn't told,

19   didn't get any handbook.

20   Q.  So you don't deny making that statement in one of your

21   calls?

22   A.  Yes, I don't deny it.

23   Q.  And what you're saying is you didn't listen in your

24   other calls whether they advised you that your call was

25   subject to being monitored and recorded?

1    A.  You don't understand the stress level one goes through

2    once you put your phone number in.  I mean, you are kind of

3    sitting there stressed out thinking about the world caving

4    in on you.  You don't pay attention to some things.

5    Q.  Is it true that your testimony was you didn't listen to

6    the part of the call that advised you that your calls are

7    subject to monitoring and recording?

8    A.  Yes.

9              MR. DUNNE:  Nothing further, Your Honor.

10             THE COURT:  All right.  Any redirect, Mr. Brink?

11             MR. BRINK:  No, Your Honor.  Thank you.

12             THE COURT:  Mr. Knutson, you can step down.

13             THE WITNESS:  Thank you, ma'am.

14             THE COURT:  Do you have any other witnesses to

15   call?

16             MR. BRINK:  I do not, Your Honor.  We rest.

17             THE COURT:  Mr. Dunne, anything further?

18             MR. DUNNE:  No, Your Honor.  The government rests.

19             THE COURT:  Then let's turn next to the question

20   of briefing.  Mr. Brink, I assume you intend to order a

21   transcript of the hearing?

22             MR. BRINK:  Yes, Your Honor, I do.

23             THE COURT:  And how -- are you going to order it,

24   do you know, on a 7- or 14-day basis?  I am just trying to

25   set how long you will need beyond today's date for your --

1              MR. BRINK:  Could you meet either of those or is

2      14 easier?

3              COURT REPORTER:  Yes, 14.

4              THE COURT:  I heard the court reporter say 14

5      would be easier.

6              MR. BRINK:  I will order it on a 14-day basis.

7              THE COURT:  So how long after you get the

8      transcript do you need to submit your brief?

9              MR. BRINK:  One week.

10             THE COURT:  All right.  So today is the 21st, so

11     14 days gets us to October 5th.  So your brief will be due

12     on October 12th.

13             And Mr. Dunne, how long after October 12th do you

14     need to do yours?

15             MR. DUNNE:  Well, Your Honor, I don't believe I am

16     going to submit any more briefing to the Court.  I had to

17     absent myself from a family vacation to get the responses in

18     as they are, but what I would like to do is look at what

19     Mr. Brink says in his papers to see if I need to respond.

20     So could I have a week?

21             THE COURT:  Absolutely.  So if you were going to

22     file a response -- why don't we just have you let the Court

23     know either way.

24             MR. DUNNE:  I will, Your Honor.

25             THE COURT:  You will either file a response or you

1    will advise the Court that you intend not to file a response

2    by October 19th.

3              MR. DUNNE:  I will, Your Honor.

4              THE COURT:  And as of October 19th I will take the

5    motions under advisement and I will get a Report and

6    Recommendation out in due course.

7              Is there anything further we need to do with

8    respect to Mr. Knutson's case today?  Mr. Dunne?

9              MR. DUNNE:  Not on behalf of the United States,

10   Your Honor.

11             THE COURT:  Mr. Brink?

12             MR. BRINK:  Not for Mr. Knutson, Your Honor.

13   Thank you.

14             THE COURT:  Thank you very much.  We will be in

15   recess.

16        (Court adjourned at 11:15 a.m.)

17                        *      *      *

18

19

20        I, Lori A. Simpson, certify that the foregoing is a

21   correct transcript from the record of proceedings in the

22   above-entitled matter.

23

24             Certified by:  *s/ Lori A. Simpson*

25                            Lori A. Simpson, RMR-CRR