# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Todd Seaver Knutson,<br><br>Defendant. | Case No. 17-cr-157 (MJD/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Andrew Dunne, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for United States of America

John C. Brink, 310 Fourth Avenue South, Suite 1008, Minneapolis, MN 55415, for Defendant Todd Seaver Knutson

HILDY BOWBEER, United States Magistrate Judge

This matter came before the undersigned United States Magistrate Judge for a pretrial motions hearing on September 21, 2017. The case was referred for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a)(3)(A). In this Report and Recommendation, the Court will address Defendant Todd Seaver Knuston's Motion to Suppress Electronic Surveillance Evidence [Doc. No. 34], Motion to Suppress Search and Seizure Evidence [Doc. No. 35], Motion to Suppress Interrogation Evidence [Doc. No. 36], and Motion to Suppress Identification Evidence [Doc. No. 37]. For the reasons set forth below, the Court recommends that the motions to

suppress search and seizure evidence and interrogation evidence be denied (with the exception of one portion that has been referred to the Honorable Katherine M. Menendez, as noted in footnote 1 below), and that the motions to suppress electronic surveillance evidence and identification evidence be denied as moot.

## I.    Procedural Background

On July 11, 2017, Defendant Todd Seaver Knutson ("Knutson") was charged with two counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). (Indictment at 1–2 [Doc. No. 20].) At his July 18, 2017 arraignment, Knutson entered a plea of not guilty. (Arraignment Order [Doc. No. 24].) Knutson subsequently filed thirteen discovery and evidence related pre-trial motions, including four separate motions to suppress evidence, which are the topic of this Report and Recommendation. (Tr. Pretrial Mots. Hr'g [Doc. No. 55].)

On August 8, 2017, Knutson was again charged by Superseding Indictment with two counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), and with one count of Possession with Intent to Distribute Methamphetamine, in violation of 20 U.S.C. § 841(a)(1) and 20 U.S.C. § 841(b)(1)(A). (Superseding Indictment at 2–3 [Doc. No. 39].)  Knutson again entered a plea of not guilty at his August 23, 2017 arraignment. (Arraignment Order [Doc. No. 44].)  Knutson did not file new motions responding to the Superseding Indictment, but instead proceeded with his previously filed pre-trial motions pending before the Court.

This Court held an evidentiary hearing on Knutson's pre-trial motions on September 21, 2017. (Min. Entry Mots. Hr'g [Doc. No. 51].)  At the hearing, the

Government submitted five exhibits into evidence: the application for and warrant authorizing the search of the premises at 890 Arkwright Street North in St. Paul, Minnesota, as well as the person of Todd Seaver Knutson, issued by Ramsey County District Court on June 6, 2017 (Gov't Ex. 1 [Doc. No. 47-1].) ("the June 6 warrant"); the application for and warrant authorizing the seizure of DNA evidence from Knutson issued by Ramsey County District Court on June 7, 2017 (Gov't Ex. 2 [Doc. No. 47-2].) ("the June 7 warrant"); the application for and warrant authorizing the search of data contained in a Samsung smartphone issued by Ramsey County District Court on June 8, 2017 (Gov't Ex. 3 [Doc. No. 47-3].) ("the June 8 warrant"); the application for and warrant authorizing the search of the Bunker Hill Security digital video recorder issued by the undersigned on June 23, 2017[1] (Gov't Ex. 4 [Doc. No. 47-4].) ("the June 23 warrant"); and the Sherburne County Jail Inmate Handbook (Gov't Ex. 6). (Tr. Pretrial Mots. Hr'g at 8-9, 13.)  This Court ruled on Knutson's nondispositive motions in its October 2, 2017 Order [Doc. No. 53]. In this Report and Recommendation, the Court reviews and makes recommendations regarding the four pending motions to suppress, which the Court took under advisement on October 17, 2017, following briefing by the parties. (*See* Def.'s Mem. [Doc. No. 56]; Dunne Letter [Doc. No. 58].)

---

[1] The undersigned found probable cause to authorize the search of the Bunker Hill Security Digital Video Recorder in a warrant issued on June 23, 2017. Because a portion of Knutson's Motion to Suppress Search and Seizure Evidence [Doc. No. 35] contests the validity of the June 23 search warrant issued by the undersigned, this Court referred the portion of the motion relating to that search warrant to the Honorable Katherine M. Menendez. (Tr. Pretrial Mots. Hr'g at 9: 7–15)

II.    **Relevant Factual Background**

The FBI Safe Streets Violent Crime Initiative is a decades-long effort through

which FBI field divisions around the country establish "long-term, proactive tasks forces"

focused on "violent gangs, crimes of violence, and the apprehension of violent fugitives."

*Combating Gang Violence in America: Examing Effective Fed., State and Local Law*

*Enforcement Strategies Before S. Judiciary Comm.*, 108th Cong. 429 (2003) (testimony

of Grant Ashley, Ass't Dir., FBI Criminal Investigative Div.). Under this program, the

FBI created the Twin Cities Safe Streets Violent Gang Task Force ("SSTF") to, among

other things, facilitate cooperation between the FBI and the St. Paul Police Department

when investigating violent and drug-related crimes in the Twin Cities area. *See* Federal

Bureau of Investigation, *What We Investigate*, Violent Gang Task Forces,

https://www.fbi.gov/investigate/violent-crime/gangs/violent-gang-task-forces (last visited

Oct. 30, 2017). Pursuant to that mission, the SSTF opened an investigation in late May

2017 into alleged drug-related criminal activity by Defendant Todd Seaver Knutson.

(Raichert Appl. Ex. 1 at 2 [Doc. No. 47-1].)

The SSTF first began to investigate Knutson on May 30, 2017, when a

cooperating defendant in a different criminal case tipped off the SSTF that large amounts

of methamphetamine were being sold from a property located at 890 Arkwright Street

North in St. Paul, Minnesota. (Raichert Appl. Ex. 1 at 2.) The cooperating defendant

specifically reported to the SSTF that a white male named "Todd" sold

methamphetamine from that location, and that s/he had been purchasing

methamphetamine from "Todd" for a long time. (*Id.*) The cooperating defendant

4

additionally reported that s/he had observed "Todd" within the past four days in possession of several firearms including "a .45 revolver handgun, [a] .40 calliber [sic] automatic handgun, [a] Mac 10 submachine gun, and an assault rifle" and that Knutson also was storing a stolen car inside his garage. (*Id.*) According to the cooperating defendant, "Todd" was dangerous and had installed "numerous surveillance cameras on the exterior of his home to alert him of the presence of police or others attempting to rob him." (*Id.*)

Using the information provided by the cooperating defendant, the SSTF was able to identify Todd Seaver Knutson as the tenant of the 890 Arkwright residence. (Raichert Appl. Ex. 1 at 3). To help confirm its identification, the SSTF showed an unidentified picture of Knutson to the cooperating defendant, who stated that the picture was of the person named Todd who had previously sold him/her methamphetamine. (*Id.*) The SSTF additionally conducted a criminal background check and learned that Knutson had previously been convicted of a number of felonies which prohibited him from legally possessing firearms. (Raichert Appl. Ex. 1 at 3-4)

After obtaining the initial tip off from the cooperating defendant, the SSTF secured the assistance of a confidential informant who relayed information similar to that previously reported by the cooperating defendant. (Raichert Appl. Ex. 1 at 3.) The confidential informant professed to be familiar with Knutson, and stated that Knutson sold large amounts of methamphetamine from the 890 Arkwright residence. (*Id.*) The confidential informant additionally reported that he/she had observed Knutson with several firearms including a ".45 calliber [sic] silver revolver, [a] .45 automatic handgun,

[a] Mac 10 sub machine gun, and a Mac 90 assault rifle" and that Knutson was storing a stolen car in his garage. (*Id.*) Like the cooperating defendant, the confidential informant identified Knutson in a photograph that was presented to him/her by the SSTF. (*Id.*)

The SSTF then convinced the confidential informant to take an active role in the investigation. On or about June 5, 2017, at the direction of the SSTF, the confidential informant visited Knutson at the 890 Arkwright residence with the specific goal of surveilling the inside of the home to determine if Knutson had guns or methamphetamine on the premises. (Raichert Appl. Ex. 1 at 3.) The SSTF stationed officers nearby to observe the confidential informant coming and going from the residence. (*Id.*)  When the confidential informant arrived at the home, s/he was let inside by Knutson. (*Id.*) After spending time in the home, the confidential informant left and went directly back to SSTF personnel and reported that Knutson had a large amount of methamphetamine and various guns in the home. (*Id.*)

Shortly thereafter, the SSTF applied for a warrant in Ramsey County District Court to search the home at 890 Arkwright and the person of Knutson.[2] (Raichert Appl. Ex. 1.)  The application requested permission to search for the following items: methamphetamine; letters, bills or other mail and papers which tend to show the owner or renter of the premises; money, precious metals and stones, bankbooks, bank statements and other papers that tend to show profit from the sale of drugs; scales and other paraphernalia used in the sale or use of drugs; photographs that show the use of drugs or

---

[2] The SSTF additionally asserts, without elaborating, that it had a "verbal felony domestic violence/probable cause pick-up" for Knutson issued from the Ramsey County family domestic violence unit. (Gov't Resp.  to Pretrial Suppression Mots. at 2 [Doc. No. 47].)

of drug paraphernalia; a stolen black Dodge sedan; all drugs covered under the controlled substance law; cell phones; and weapons, guns, firearms, ammunitions, and other dangerous weapons. (*Id.*)  The application additionally asserted that probable cause existed to believe that crimes had been committed by Knutson at the 890 Arkwright residence based on the information obtained from the previous day's undercover surveillance as well as the other information supplied by the confidential informant and cooperating defendant. (Raichert Appl. Ex. 1.) The Honorable Gary Bastian, Ramsey County District Court, reviewed the application, determined that probable cause existed to permit the search, and issued a warrant at 9:43 a.m on June 6, 2017, authorizing members of the SSTF to search the premises at 890 Arkwright as well as the person of Todd Seaver Knutson for the items listed in the application. (Search Warrant Ex. 1 at 2-3 [Doc. No. 47-1].). That same day, the SSTF executed the warrant. (Parker Aff. ¶ 6 [Doc. No. 1].)

In executing the warrant, SSTF members first surveilled Knutson as he drove from the 890 Arkwright Street residence to a nearby SuperAmerica gas station located at the corner of Arkwright and Maryland Avenue in St. Paul. (Parker Aff. ¶ 6; Gov't Resp.  to Pretrial Suppression Mots. at 2.)  There, at about 2:15 p.m., law enforcement officers approached Knutson and he reacted by attempting to flee on foot. (Bilek Aff. at 1 [Doc. No. 47-2].) Knutson ran around the gas station and onto Maryland Avenue, but was apprehended by an officer after traveling a relatively short distance. (Parker Aff. ¶ 6.) After Knutson was in custody, police searched the pathway along which Knutson had fled and found cash they believed Knutson dropped while running away from the police.

7

(*Id.*) Police also viewed surveillance video at the gas station that appeared to show Knutson throwing something into the air during his attempted flee. (*Id.*) Police then searched the roof of the gas station and found a Lorcin .25 caliber handgun with the serial number scratched off, which SSTF inferred was the item thrown by Knutson in the video captured by the surveillance camera. (Bilek Second Aff. at 2 [Doc. No. 47-3].)

After arresting Knutson, a St. Paul Police SWAT team working in cooperation with the SSTF executed the search warrant on the 890 Arkwright residence. (Bilek Aff. at 2; Parker Aff. ¶ 7.) At the house, SSTF members found approximately 1,481 grams of field-tested methamphetamine in a backpack in the closet of a bedroom. (Parker Aff. ¶¶ 8-9.) The SSTF also found an FN 9 mm handgun, two Rugar Vaquero .45 caliber handguns, a MAK 90 rifle, a Mac 10 .45 caliber handgun, and a Marlin .22 caliber rifle. (Parker Aff. ¶ 8.) Small amounts of methamphetamine were discovered in different rooms throughout the house, as well digital scales and pipes used for smoking narcotics. (Bilek Second Aff. at 2.) Additionally, SSTF collected multiple items of evidence indicating that Knutson lived at 890 Arkwright. First, the SSTF interviewed Knutson's cousin, who appears to have been at the home when the search took place, and who informed SSTF personnel that Knutson lived at 890 Arkwright with his girlfriend. (Parker Aff. ¶ 7.) Second, SSTF interviewed an unidentified woman who was also at the home during the search, and she reported that the home was Knutson's. (*Id.*) Lastly, the SSTF located multiple pieces of mail and other paperwork in the home which indicated to them that Todd Knutson lived there. (*Id.*; Bilek Second Aff. at 2.)

The next day, on June 7, 2017, the SSTF applied for another search warrant in Ramsey County District Court to authorize it to obtain a DNA sample from Knutson to compare with DNA recovered from firearms and narcotics seized at 890 Arkwright. (Bilek Aff. at 2.) The SSTF asserted that it had probable cause to seize the DNA from Knutson because the SSTF had gathered substantial evidence indicating that guns and narcotics were illegally trafficked out of the residence and the DNA sample would tend to show whether or not Knutson committed those crimes. (Bilek Aff. at 1.) Specifically, the warrant application pointed to the circumstances surrounding the attempted stop of Knutson, his subsequent efforts to flee from the police, the gun found at the SuperAmerica gas station where Knutson was arrested, the mail and other paperwork addressed to Knutson found in the home at 890 Arkwright, and the narcotics and guns also found there. (Bilek Aff. at 1-2.) The Honorable Judith Tilsen, Ramsey County District Court, reviewed the application detailing the circumstances of the previous day's searches, found probable cause to authorize the seizure of a DNA sample based on those circumstances, and issued the warrant at 11:29 a.m. on June 6, 2017. (Search Warrant 1-2 [Doc. No. 74-2].) At some point thereafter, the SSTF collected a DNA sample from Knutson. (Gov't Resp. Pretrial Suppression Mots at 5 [Doc. No. 47].)

On June 8, 2017, the SSTF applied for another search warrant in Ramsey County District Court to search the Samsung smartphone taken from Knutson and look for evidence of narcotics and weapons trafficking. (Bilek Second Aff. at 1, 3.)  In particular, the SSTF requested permission to access the data contained in the cell phone to search the phone's call history, contact list, text messages, images and videos, internet history,

calendar entries, voice recordings, file system and global positioning system locations. (Bilek Second Aff. at 1.)  The SSTF asserted that it had probable cause to conduct the search of the phone for the same reasons provided in its application for the DNA sample search warrant, i.e. that the SSTF had gathered significant evidence to show that Knutson had trafficked narcotics and illegally possessed multiple firearms. (Bilek Second Aff. at 2-3.) The Honorable Laura Nelson, Ramsey County District Court, reviewed the application, determined that the SSTF had demonstrated probable cause to permit the search of the phone, and issued the search warrant. (Search Warrant 4-5 [Doc. No. 74-3].)

## III.    Motion to Suppress Search and Seizure Evidence

Knutson moves to suppress evidence obtained by the SSTF incident to Knutson's arrest on June 6, 2017, and also moves to suppress evidence obtained pursuant to three search warrants: the June 6 search warrant authorizing the search of the 890 Arkwright residence and the person of Knutson; the June 7 search warrant authorizing the seizure of DNA evidence from Knutson; and the June 8 search warrant authorizing the search of data on Knutson's cell phone [Doc. No. 35].

### A.    Standard of Review

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. To protect that right, the Fourth Amendment generally requires the government to obtain a warrant from a neutral judge prior to searching any place where an individual has a reasonable expectation of privacy. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968) (stating "police must, whenever practicable, obtain advance judicial approval of

searches and seizures through the warrant procedure"); *see also Oliver v. United States*, 466 U.S. 170, 177 (1984) (quotation omitted) ("[T]he touchstone of [Fourth] Amendment analysis [is] whether a person has a constitutionally protected reasonable expectation of privacy.").

The Fourth Amendment additionally requires that a search warrant be supported by probable cause. U.S. Const. amend IV ("no [w]arrants shall issue, but upon probable cause"). Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As the very term implies, probable cause "deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Nevertheless, the government must provide the court "with a substantial basis for determining the existence of probable-cause for issuance of search warrant," *Gates*, 462 U.S. at 239, and wholly conclusory statements alleging criminal wrongdoing will not suffice, *see, e.g.*, *Aguilar v. Texas*, 378 U.S. 108 (1964); *Nathanson v. United States,* 290 U.S. 41, 54 S. Ct. (1933).

A court reviewing a determination of probable cause must give great deference to the issuing judge's assessment. *Gates*, 462 U.S. at 236. A reviewing court's task, then, is to review the warrant application to "ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In making such a determination, courts consider the totality of the circumstances. *Id.* at 238. Additionally, if the issuing judge "relied solely

on the supporting affidavit to issue the warrant, only that information which is found

within the four corners of the affidavit may be considered in determining the existence of

probable cause." *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)

(quotation and internal quotation marks omitted).

If the government conducts an illegal search, an aggrieved party may move to

suppress the illegally obtained evidence by operation of the exclusionary rule. *See, e.g.*,

*United States v. Barraza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013). The

exclusionary rule is a judicially created remedy which aims to deter future illegal

searches by preventing the government from profiting from constitutional violations. *See*

*United States v. Calandra*, 414 U.S. 338, 348 (1974); *see also Mapp v. Ohio*, 367 U.S.

643, 648 (1961). More specifically, the exclusionary rule bars the government from using

illegally obtained evidence in its case-in-chief against a criminal defendant. *United States*

*v. Leon*, 468 U.S. 897, 910 (1984).

**B.    Search of the 890 Arkwright Street Residence and Knutson's Person**

Knutson argues that the evidence obtained pursuant to the June 6 warrant

authorizing the SSTF to search the 890 Arkwright residence and Knutson's person should

be suppressed because (1) the SSTF lacked probable cause to conduct the searches;

(2) the warrant was overbroad; (3) the warrant did not sufficiently describe the property

to be seized by the warrant; (4) the warrant did not describe the location to be searched

with sufficient particularity; and (5) the search was conducted in a manner that exceeded

the authority provided by the warrant. (Def.'s Mem. Supp. Pretrial Mots. at 2 [Doc. No.

56].). The Court will address each of those arguments in order.

12

### 1.    Lack of Probable Cause

Knutson asserts that any evidence obtained from the search of the 890 Arkwright residence or his person on June 6, 2017, should be suppressed because the warrant authorizing those searches was not supported by probable cause.[3]  (Def.'s Mem. Supp. Pretrial Mots. at 2–3.)  In particular, Knutson argues that the principal sources of information relied upon in the probable cause determination—the statements provided by the cooperating defendant and the confidential informant—were insufficient to indicate that Knutson had engaged in any illegal activity. (*Id.* at 3–7.)  In making this argument, Knutson points out the following: the cooperating defendant merely said that a white male named "Todd" was selling methamphetamine out of the house at 890 Arkwright and that "Todd" was in possession of firearms; the cooperating defendant attested, without support, that "Todd" was a tenant of the residence at 890 Arkwright; the confidential informant reported him or herself to be familiar with Todd Knutson but provided no basis for this knowledge; the confidential informant reported that Knutson was selling methamphetamine without providing any basis for this knowledge; and both the

---

[3] Knutson's argument in support of his Motion to Suppress Search and Seizure Evidence [Doc. No. 35] and his Motion to Suppress Interrogation Evidence [Doc. No. 36] suggests his arrest was made pursuant to a *Terry* stop that escalated into an arrest. In *Terry v. Ohio*, the Supreme Court articulated the reasonable suspicion standard, which requires that police have cause to reasonably believe a person may be engaging in illegal activity before they can stop that person for questioning. 392 U.S. 1, 21 (1968). At various points in his briefing, Knutson argues the SSTF acted improperly in detaining him because it lacked reasonable suspicion that criminal activity was afoot. This argument is misplaced. The SSTF had a search warrant authorizing it to search Knutson's person. (Search Warrant at 3 [Doc. No. 47-1].) Consequently, the SSTF did not need a reasonable suspicion to detain Knutson because it had already demonstrated probable cause to search his person. Any challenge, then, must be targeted at the probable cause determination underlying the search warrant,  not the lack of reasonable suspicion to stop.

confidential informant and the cooperating defendant identified Knutson when presented with a single photograph, which Knutson asserts enabled the police to coach the witnesses to identify Knutson as the person in the photograph. (*Id*. at 3.)

Knutson also asserts that the probable cause in the search warrant application is not directed at the 890 Arkwright location, but rather at Knutson. (Tr. Pretrial Mots. Hr'g 19:16–24.) Based on that, Knutson argues that the warrant application lacked probable cause to authorize the search of the home because it was premised on the assertion that Knutson was a tenant of 890 Arkwright when, according to Knutson, he was not. (Tr. Pretrial Mots. Hr'g 25–26.) Further, Knutson asserts that the SSTF misled the warrant-issuing judge when it stated in its affidavit that Knutson was a tenant of 890 Arkwright, because he was not named on the lease for the home.[4] (Def.'s Mem. Supp. Pretrial Mots. at 2–3.) Because Knutson was not on the lease, he reasons, the search warrant application did not establish a sufficient nexus to the property searched to support a finding of probable cause.[5]

---

[4] Ruling from the Bench at the evidentiary hearing, the undersigned denied Knutson's motion for a *Franks* hearing [Doc. No. 45] finding that Knutson failed to make a substantial preliminary showing that identifying Knutson as a tenant of the house at 890 Arkwright was a materially false statement. (Tr. Pretrial Mots. Hr'g 17:8–18.) In reaching this conclusion, the undersigned determined that the "information received both from a corroborating defendant and from a confidential informant, separately gained, separately obtained, that although they may not identify Mr. Knutson as the named renter or named leaseholder of that home, it gave the officer plenty of reason to believe and through the officer the issuing court plenty of reason to understand that Mr. Knutson was connected with the premises, that he was often found in the premises, that he was transacting some business from the premises." (Tr. Pretrial Mots. Hr'g 26:14–24.)

[5] Knutson's argument relies upon facts outside of the four corners of the warrant application, namely that Knutson's name was not on the lease for the property and that

Reviewing the four corners of the warrant application, the Court finds more than

sufficient probable cause to justify the warrant issued by the Ramsey County District

Court authorizing the search of Knutson's person and the resident at 890 Arkwright.

When considering the sufficiency of probable cause underlying a warrant, the reviewing

court's task is to ensure that the issuing court "had a 'substantial basis for . . .

conclud[ing]' that probable cause existed" in light of the "totality of circumstances."

*Gates*, 462 U.S. at 238–39. Further, probable cause may be found where an informant's

tip is corroborated through other sources of information. *See, e.g.*, *id.* at 244. Even if

there is a basis to doubt an informant's motives, the informant's "explicit and detailed

description of alleged wrongdoing, along with a statement that the event was observed

first-hand, entitles his tip to greater weight then might otherwise be the case." *Id.* at 234.

Here, the SSTF stated that a cooperating defendant provided a tip that methamphetamine

was being sold out of the 890 Arkwright home. (Raichert Appl. Ex. 1 at 2.)  The

cooperating defendant additionally informed the SSTF that a man with the same first

name and of the same race as Knutson was personnally trafficking methamphetamine

out of that home and that he possessed multiple firearms at that location. (*Id.*)

---

the mail found at the 890 Arkwright residence during the search was addressed to him at
a location in Savage, Minnesota. (Tr. Pretrial Mots. Hr'g 17:9–12.)  If the warrant-issuing
judge "relied solely on the supporting affidavit to issue the warrant, only that information
which is found within the four corners of the affidavit may be considered in determining
the existence of probable cause." *Etheridge*, 165 F.3d at 656. Here, because the
Honorable Gary Bastian relied solely on the affidavit when determining whether probable
cause existed to authorize the search, Knutson's factual assertions not included in the
warrant application are outside of the Court's consideration and have no effect on the
analysis.

Moreover, even if the information provided by the cooperating defendant was not by itself sufficient for a finding of probable cause, the SSTF undertook significant efforts to corroborate the cooperating defendant and thus enhance his/her reliability, and these efforts were set forth in the supporting affidavit. First, the SSTF secured the assistance of a confidential informant who claimed to be familiar with Knutson. (Raichert Appl. Ex. 1 at 3.)  Based on interviews of the confidential informant, the SSTF obtained information that tracked the information provided by the cooperating defendant, namely, that Todd Knutson was selling methamphetamine out of the home at 890 Arkwright and that Knutson possessed a number of firearms at the home. (*Id.*)  The confidential informant was even able to identify some of the same types of guns in Knutson's possession as were identified by the cooperating defendant, *e.g.*, the .45 revolver, the Mac 10 submachine gun, and the assault rifle. *Compare* (Raichert Appl. Ex. 1 at 2) *with* (Raichert Appl. Ex. 1 at 3). Second, and even more persuasive of the reliability of the SSTF claims, the confidential informant actually visited the 890 Arkwright home to surveil the premises. (Raichert Appl. Ex. 1 at 3.)  S/he was let in personally by Knutson and observed drugs and guns located inside the house. (*Id.*)  Immediately after leaving the house, s/he reported to the SSTF that Knutson was then presently in possession of significant amounts of methamphetamine and various firearms. (*Id.*)

With respect to Knutson's emphasis on the legal status of the property, the Court finds no legal significance in the fact that Knutson's name was not on the lease for the purposes of this probable cause determination.  The affidavit refered to Knutson as the "tenant" of 890 Arkwright. A tenant is "one who has the occupation or temporary

16

possession of lands or tenements of another." *Merriam-Webster's Collegiate Dictionary* 1286 (11th ed. 2003). In the more specific context of a real estate contract, a tenant is "someone who holds or possesses lands or tenements by any kind of right or title." Black's Law Dictionary (10th ed. 2014). Knutson essentially argues that because he was not the legal tenant of the property under contract, he was not a tenant at all and the search warrant was invalid for lacking a nexus between the property searched and the criminal activity alleged. The Fourth Amendment does not require an affiant to confirm the legal status of property prior to searching a person's home. *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (holding that probable cause to search requires a nexus between the contraband and the place to be searched, making no mention of the legal status of property sought to be searched). What the Fourth Amendment does require is that the affiant demonstrate that the place to be searched is connected with the criminal activity suspected. *See Id. at* 550; *Warden v. Hayden*, 387 U.S. 294, 307 (1967). Here, the SSTF provided ample basis in its affidavit supporting the warrant application that criminal activity was being conducted out of the house at 890 Arkwright and that evidence of that criminal activity would be uncovered in the search.[6]

---

[6] The Court notes that if Knutson did not live at 890 Arkwright, as Knutson asserted in his briefing and at oral argument, then his motion to suppress the search and seizure evidence might fail for a different reason; To have standing to challenge a government search under the Fourth Amendment, a defendant must establish that the government violated his reasonable expectation of privacy when it conducted a search. *United States v. Douglas*, 744 F.3d 1065, 1069 (8th Cir. 2014). "A defendant has a sufficient interest to constitute standing if he has an adequate possessory or proprietary interest in the place or object searched." *United States v. Kelly*, 529 F.2d 1365, 1369 (8th Cir. 1976).

Based on the information provided in the supporting affidavit, the Court finds that the June 6 search warrant was supported by probable cause. The SSTF included meaningful and convincing information regarding the criminal activity suspected at 890 Arkwright and Knutson's involvement in that activity, and probable cause to believe evidence of that activity would be located there and on his person. In light of the totality of circumstances, the Court finds that sufficient probable cause existed to to authorize the search of his person and of the house at 890 Arkwright.

### 2.    Overbreadth of Warrant Due to Lack of Particularity Regarding the Place to be Searched and the Items to be Seized

Knutson additionally asserts that the warrant authorizing the search of 890 Arkwright was defective because it was overbroad. (Def.'s Mem. Supp. Pretrial Mots. at 2.) "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). The particularity requirement "prevent[s] general searches" and serves to limits legal searches to "specific areas and things for which there is probable cause to search." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Consequently, the "requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* In other words, the government must establish a nexus between the contraband and the place to be searched, *Tellez*, 217 F.3d 547, 550 (8th Cir. 2000), which is determined by "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Etheridge*, 165 F.3d at 657.

Here, the SSTF applied for and was granted a search warrant for evidence of drug trafficking and illegal gun possession. In the affidavit, the SSTF alleged facts based on interviews of the cooperating defendant and a confidential informant, which connected the suspected crime to the contraband sought and the place to be searched, *i.e.* drug trafficking (suspected crime) in methamphetamine (contraband to be seized) taking place at 890 Arkwright (place to be searched). (Raichert Appl. Ex. 1 at 2–3.)  To that end, the SSTF sought permission in its warrant application to search "890 Arkwright St N, St. Paul, MN, [] a green stucco single family home with two detached garages . . . located on the southeast corner of Arkwright Street N and York Ave E." (*Id* at 2.) Further, the warrant sought permission to search for a specific list of items which would tend to prove the suspected crime was taking place at that residence, *i.e.* methamphetamine in all of its forms; letters, bills or other mail and paper which tend to show the owner or renter of the premises; money, precious metal and stones, bankbooks, bank statements and other papers that tend to show the profit from the sale of drugs; photographs that show the use of drugs or drug paraphernalia; stolen black in color Dodge sedan; all other drugs covered under the controlled substance law; cell phones; weapons, guns, firearms, ammunitions and other dangerous weapons. (Raichert Appl. Ex. 1 at 1.)  Therefore, because the warrant was specifically directed at a particular place and identified specific items to be searched for and seized, the Court finds that the warrant was not overly broad and had the requisite particularity.

### 3.    Evidence Seized that was not Described in the Warrant

Next, Knutson asserts that the search conducted at 890 Arkwright was unlawful because SSTF members seized evidence that was not described in the warrant. (Def.'s Mem. Supp. Pretrial Mots. at 2.) Knutson does not indicate which items, if any, were seized during the search that do not fit within the categories of items authorized to be searched for and seized by the warrant. Therefore, the Court has no basis to conclude that the SSTF seized items that were not described in the warrant.

### 4.    Search Exceeded Authority Provided by Warrant

Lastly, Knutson asserts that the SSTF officers who executed the search acted improperly by excercising discretion beyond the authority provided by the warrant. (Def.'s Mem. Supp. Pretrial Mots. at 2.)  Knutson does not indicate how, or in what way, the SSTF officers exceeded their authority when executing the search warrant at 890 Arkwright or on his person. Therefore, the Court does not have a basis to conclude that the SSTF exceeded its authority when executing the warrant.

### C.    Seizure of DNA Buccal Swab

Knutson moves to suppress the DNA sample evidence that was obtained by the SSTF pursuant to the June 7 search warrant issued by the Ramsey County District Court. (Def.'s Mem. Supp. Pretrial Mots. at 7.)  Extracting a DNA sample from a defendant is a search within the scope of the Fourth Amendment's protections. *Maryland v. King*, 133 S. Ct. 1958, 1968 (2013). Absent circumstances rendering a warrantless search or seizure reasonable, the police must generally obtain a warrant prior to obtaining a DNA sample. *King*, 133 S. Ct. at 1969 (referencing *Illinois v. McArthur*, 531 U.S. 326, 330

20

(2001)). Here, to show probable cause in its June 7 search warrant application, the SSTF heavily relied upon facts and evidence it obtained from the search of 890 Arkwright and Knutson's person. (Bilek Aff. at 2–3.)  Specifically, the SSTF avers in its affidavit that Knutson fled from the police at the SuperAmerica gas station and also tossed a handgun on the roof of the gas station. (Bilek Aff. at 2.)  Additionally, the SSTF recounts in the affidavit the various guns and narcotics that it recovered from 890 Arkwright. (*Id.* at 3.)  Based on these factual assertions, the Ramsey County District Court issued the warrant to seize a DNA sample from Knutson.

Knutson does not allege the facts contained in the DNA search warrant application were insufficient to establish probable cause, but that they were premised on evidence improperly obtained from the illegal search of the house at 890 Arkwright and of Knutson's person. (Def.'s Mem. Supp. Pretrial Mots. at 7.)  (Def.'s Mem. Supp. Pretrial Mots. at 7.)  As detailed above, the Court found that the warrant authorizing the search at 890 Arkwright and of Knutson's person was supported by probable cause, and that the June 6 searches were properly executed pursuant to that warrant. Therefore, the Court rejects Knutson's argument that the warrant authorizing the DNA sample seizure was premised on illegally obtained evidence. The Court finds probable cause did exist to obtain the DNA sample, and recommends denying the motion to suppress the DNA evidence obtained pursuant to the June 7 warrant.

### D.    Search of the Samsung Smartphone

Knutson moves to suppress the evidence seized pursuant to the June 8 warrant authorizing the SSTF to search the data contained on a Samsung smartphone. Knutson

again asserts that the search of the data contained on the phone was unlawful because the warrant authorizing the search relied upon illegally obtained evidence in the absence of which there was no probable cause. (Def.'s Mem. Supp. Pretrial Mots. at 7.). For the same reasons as articulated above in Section C, the Court rejects this argument.

Knutson additionally asserts that the warrant application to search the phone suffered from a procedural defect, namely that the information connecting Knutson with the Samsung smartphone was supplied in the warrant application but not the affidavit sworn to under oath. Knutson's argument appears to center around the following statement in the warrant application: "Data contained on the cellular phone recovered from TODD SEAVER KNUTSON (DOB: 10/14/1982)." (Bilek Second Aff. at 1). From what the Court is able to discern, Knutson contends this phrase is the only indication in the warrant application that the Samsung smartphone to be searched belonged to Knutson, and that because the statement was made in the application section and not the affidavit, the Court could not properly rely on it to find probable cause. After reviewing the June 8 application, the Court finds Knutson's argument unavailing. Specifically, the document in question combines the application section and the affidavit into one document, the entire contents of which are sworn to by the affiant at the end. Therefore, the clause in question was in fact sworn to as part of the affidavit. Accordingly, the Court finds the issuing court had probable cause to believe that evidence of a crime was likely to be found on the Samsung smartphone and recommends denying Knutson's motion to suppress the evidence seized from the search of that phone.

## IV.    Motion to Suppress Interrogation Evidence

Knutson originally moved to suppress statements ostensibly obtained by the government on four separate occasions [Doc. No. 36].  Specifically, Knutson moved to suppress statements stemming from his arrest on June 6, 2017, statements made during the government's alleged interrogation of him at the Sherburne County Jail on June 8, 2017, statements he made during a June 9, 2017, disturbance at the Sherburne County Jail, and statements he made in phone calls from the Sherburne County Jail that were intercepted by prison officials. (*Id.*)

At the hearing, the Government stated it does not intend to use the June 8 statements made by Knutson at the Sherburne County Jail. (Tr. Pretrial Mots. Hr'g 7:2-12.)  Therefore the Court recommends denying that part of the motion as moot.  The Government also represented at the hearing that it does not intend to use at trial Knutson's statements made during the June 9 altercation at the jail (Tr. Pretrial Mots. Hr'g 10:8-15.) Therefore, the Court will also recommend denying as moot the portion of this motion that seeks to suppress those statements. What remains for the Court to address in this Report and Recommendation are the statements Knutson made near the time of his arrest on June 6, and the statements he made in recorded telephone calls from the Sherburne County Jail.

### A.    Statements Made During Knutson's Arrest

Knuston asserts that the Court should suppress any statements he made during his arrest because the arrest itself was illegally made without probable cause. The Fourth Amendment prohibits "warrantless arrest[s] by an officer who lacks probable cause."

23

*New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015). "The totality of the circumstances approach that applies probable cause to arrest also applies to probable cause to search." *United States v. Brown*, 49 F.3d 1346, 1350 (8th Cir. 1995). However, a finding of probable cause to search does not necessarily mean there is also probable cause to arrest. *White v. United States*, 448 F.2d 250, 254 (8th Cir. 1971) (finding probable cause to search a car but not probable cause to arrest the driver). Here, Knutson provides no indication regarding what statements were obtained by the SSTF during his arrest, nor does he indicate how or where the police interrogated him. Nevertheless, the Court recognizes that although it has previously determined that the SSTF had probable cause to *search* Knutson, further analysis is required to determine if the SSTF had probable cause to *arrest* Knutson. If the arrest exceeded constitutional bounds, then it is possible that the SSTF obtained statements during the arrest that should be suppressed.

Upon review of the record, the Court is satisfied that the SSTF had probable cause to arrest Knutson, and for multiple reasons. An officer has probable cause to make a warrantless arrest when he or she has knowledge "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *United States v. Wajda*, 810 F.2d 754, 758 (8th Cir. 1987). First, as detailed above, the SSTF had uncovered significant information prior to the arrest that indicated Knutson was engaged in drug trafficking and gun possession activities. While this evidence was mainly supplied to support probable cause for the warrant to search his person, it also provides significant support here for a finding of probable cause to arrest Knutson. Second, Knutson's fleeing the scene when the police approached him lends additional support for

24

believing he had committed or was committing a crime, because an officer with knowledge of the SSTF investigation could reasonably believe that Knutson was in possession of evidence of the drug trafficking of which he was suspected. Third, the police discovered a handgun near the path where Knutson ran from them, which provides significant support for the belief that Knutson was committing a crime at the time of his arrest, *i.e.* felon in possession of a firearm. All of these facts together give a strong basis to believe that Knutson had committed or was committing a crime, and thus the SSTF had probable cause to arrest Knutson. Therefore, because Knutson asserts the illegality of the arrest as the sole basis for suppressing his June 6 statements, the Court recommends denying this portion of Knutson's Motion to Suppress Interrogation Statement.

### B.    Telephone Call Made by Knutson from the Sherburne County Jail

Knutson next asserts that the government unlawfully intercepted his telephone calls from the Sherburne County Jail in a manner that constituted a warrantless search without probable cause, and that the evidence obtained thereby should be suppressed.[7] The Fourth Amendment generally restricts the government from conducting searches or seizures without a warrant in places where a person has a reasonable expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). For an expectation of privacy to be reasonable, it must be based on a person's actual subjective expectation of privacy that is reasonable based on objective community standards. *Id*. A person may have a

---

[7] Knutson additionally asserts, without citing factual or legal support, that the government violated his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel when it recorded the calls. (Def.'s Mem. Supp. Mot. at 10.) Because Knutson provided no basis to support these claims, either in briefing or at oral argument, the Court deems them waived.

reasonable expectation of privacy in the contents of a telephone call. *Katz v. United States*, 389 U.S. 347, 353 (1967). However, a prisoner does not have a reasonable expectation of privacy in a telephone call when he impliedly consents to it being recorded. *United States v. Lucas*, 499 F.3d 739, 780 (8th Cir. 2007); *see also United States v. Eggleston*, 165 F. 3d 624, 626 (8th Cir. 1999). As a matter of law, a prisoner who makes a telephone call after being notified that it will be recorded impliedly consents to the recording. *United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992).

Here, the government asserts that Knutson was aware his telephone conversations were being recorded, and thus consented to the recordings. (Tr. Pretrial Mots. Hr'g at 12-14; Gov't Resp. to Pretrial Suppression Mots. at 10.)  First, the government recorded a conversation Knutson had over a jailhouse phone in which he said, "I can't talk about it over the jail phones because they're recorded." (Tr. Pretrial Mots. Hr'g at 32:14-25; Gov't Resp. to Pretrial Suppression Mots at 10.)  Knutson testified at the hearing and when cross-examined about that statement, he did not deny making it. (Tr. Pretrial Mot.'s Hr'g at 32:22) Second, the government's witness at the hearing, Michele Vlasak, an Investigator at the Sherburn County Jail, testified that each inmate is provided with an inmate manual that explicitly instructs inmates that their telephone calls will be recorded. (Tr. Pretrial Mot.'s Hr'g at 12-13; Gov't Ex. 6 at 5 ("Telephone conversations are recorded with the exception of your calls to your attorney.").) Third, every time an inmate makes a call from the prison, a pre-recorded message notifies the inmate at the beginning of the call that the telephone call is being recorded. (Tr. Pretrial Mot.'s Hr'g at 14:11-20; Gov't Resp.Pretrial Suppression Mots. at 10.)  Fourth, signs posted at the jail

26

make clear that the conversations in the jail are recorded. (Gov't Resp.Pretrial Suppression Mots. at 10.) Based on these facts, the Court finds that Knutson was aware that his telephone conversations were being recorded at the jail, and thus implicitly consented to their recording. Because he consented to their recording, Knutson did not have a reasonable expectation of privacy in the contents of those calls. Therefore, the Court recommends denying the motion to suppress the prison telephone calls.

**V.     Motion to Suppress Illegal Identification Evidence**

Knutson moves to suppress evidence obtained as a result of illegal identification procedures. [Doc. No. 37]  The Government indicated that it does not intend to introduce any in-court identification evidence based upon any out-of-court identification procedures used by law enforcement. (Gov't Resp. to PretrialSuppression Mots. at 10.) Therefore, the Court recommends denying the motion as moot.

**VI.    Motion to Suppress Electronic Suveillance Evidence**

Knutson originally moved to suppress electronic surveillance evidence in the government's possession pertaining to its investigation of Knutson [Doc. No. 34].  In its response to the motion, the Government indicated that it is not aware of any such electronic surveillance evidence in this matter. (Gov't Resp. to Pretrial Suppression Mots. at 4.) Based on the Government's representation that no electronic surveillance was gathered in its investigation, Knutson conceded that his motion is moot. (Def.'s Mem. Supp. Mot. at 1.) Therefore, the Court recommends denying the Motion to Suppress Electronic Surveillance Evidence as moot.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.) Defendant Todd Seaver Knutson's Motion to Suppress Electronic Surveillance Evidence [Doc. No. 34] be **DENIED** as moot;

2.) Defendant Todd Seaver Knutson's Motion to Suppress Search and Seizure Evidence [Doc. No. 35] be **DENIED** except for that part of the motion directed to the June 23 warrant issued by the undersigned, which will be addressed in a separate Report and Recommendation;

3.) Defendant Todd Seaver Knutson's Motion to Suppress Interrogation Evidence [Doc. No. 36] be **DENIED** in part and **DENIED** as moot in part; and

4.) Defendant Todd Seaver Knutson's Motion to Suppress Identification Evidence [Doc. No. 37] be **DENIED** as moot.

Dated: November 13, 2017          _s/ Hildy Bowbeer_____
                                  HILDY BOWBEER
                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.