```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
       ------------------------------------------------------------
 3                                      )
       United States of America,        )    File No. 17CR157
 4                                      )    (MJD-HB-1)
                 Plaintiff,             )
 5                                      )
       vs.                              )    Minneapolis, Minnesota
 6                                      )    April 3, 2019
       Todd Seaver Knutson,             )    Courtroom 13E
 7                                      )    11:53 a.m.
                 Defendant.             )
 8     ------------------------------------------------------------
 9
                 BEFORE THE HONORABLE MICHAEL J. DAVIS
10               UNITED STATES DISTRICT COURT JUDGE
                            (SENTENCING)
11
       APPEARANCES
12      For the Plaintiff:         Assistant United States Attorney
                                   ANDREW DUNNE, AUSA
13                                 300 South Fourth Street
                                   Suite 600
14                                 Minneapolis, Minnesota 55415

15      For the Defendant:         John C. Brink
                                   JOHN C. BRINK, ESQ.
16                                 310 4th Avenue South
                                   Suite 1008
17                                 Minneapolis, MN 55415

18      Court Reporter:            MARIA V. WEINBECK, RMR-FCRR
                                   1005 U.S. Courthouse
19                                 300 South Fourth Street
                                   Minneapolis, Minnesota 55415
20

21

22

23
            Proceedings recorded by mechanical stenography;
24     transcript produced by computer.

25
```

1                    **P R O C E E D I N G S**

2                     **IN OPEN COURT**

3                      **(11:53 a.m.)**

4              THE COURT:  Good morning.  Please be seated.

5      Let's call this matter.

6              THE CLERK:  United States of America versus Todd

7      Seaver Knutson, Criminal Case Number 17CR157.

8              Counsel, please state your appearances for the

9      record.

10             MR. BRINK:  John Brink for Mr. Knutson, Your

11     Honor.

12             THE COURT:  Good morning.

13             MR. DUNNE:  Andrew Dunne on behalf of the United

14     States, Your Honor.

15             THE COURT:  Good morning.  Please step forward.

16             Before we get started, right after you left

17     chambers, Counsel, I received a report dealing with the

18     defendant up at Sherburne County, and I don't know if you

19     had seen this, Mr. Brink?

20             MR. BRINK:  I had not seen it, Your Honor.

21             THE COURT:  All right.  It's something that's

22     serious, and I don't know where you stand on if you want to

23     proceed.

24             MR. BRINK:  Yes, given his level of addiction,

25     Your Honor, it doesn't surprise me.  He's had a very

1   difficult problem with drugs for his entire, well, I was

2   going to say adult life, but it goes back to his childhood.

3           THE DEFENDANT:  I'm sorry, Your Honor.  I mean it

4   was a huge mistake.

5           THE COURT:  Speak into the microphone so I can

6   hear you.

7           THE DEFENDANT:  I'm sorry, Your Honor.  It was a

8   huge mistake on my behalf.

9           THE COURT:  We'll get to that, sir.  Just hold on.

10  All right.  Let's proceed then.

11          Counsel, have you had an opportunity to review the

12  Presentence Investigation Report in this matter?

13          MR. BRINK:  Yes, I have, Your Honor.

14          MR. DUNNE:  Yes, Your Honor.

15          THE COURT:  Any objections to the factual

16  statements contained in the Presentence Investigation

17  Report?

18          MR. BRINK:  None other than those contained in my

19  position papers, Your Honor.

20          MR. DUNNE:  No, Your Honor.

21          THE COURT:  The Court will adopt the factual

22  statements contained in the Presentence Investigation Report

23  as its own.  Counsel, have you had an opportunity to review

24  the advisory guideline calculations that have been prepared

25  for me?

```
 1              MR. DUNNE:  Yes, Your Honor.

 2              MR. BRINK:  Yes.

 3              THE COURT:  Any objections to those calculations?

 4              MR. DUNNE:  On behalf of the United States, Your

 5    Honor, it's not that it's an objection to the calculations

 6    as much as it is an error on my part in drafting the plea

 7    agreement.  The presentence report has concluded that

 8    Mr. Knutson is a career offender looking at an applicable

 9    guideline range of 262 to 327 months.  That was not in the

10    plea agreement.  I missed it.  I drafted the plea agreement.

11    And I don't believe that Mr. Knutson should be punished

12    further based upon an error on my part.  So I would ask the

13    Court to impose the guideline range that's in the plea

14    agreement which is 235 to 294.

15              THE COURT:  Mr. Brink?

16              MR. BRINK:  No objection to the calculation of the

17    guidelines, Your Honor.  We do object to the appropriateness

18    of a sentence in that guideline range.

19              THE COURT:  The Eighth Circuit just came down with

20    an opinion.  I was reading it late last night.  And Judge

21    Gruender dissented, and I agree with his dissent.  And I

22    will agree to go along with the plea agreement, and the plea

23    agreement guideline range is 235, custody range of 235 to

24    293 months in custody.  Supervised release of five years.

25    Fine range of 35,000 to $350,000, and a special assessment
```

 1    of $100.  All right, Mr. Brink?

 2              MR. BRINK:  Your Honor, just a couple of

 3    housekeeping matters before I make my argument.

 4              Paragraph 118 of the presentence report lists

 5    Rebecca Portz as a person that Mr. Knutson was in a

 6    relationship with.  That relationship is over, and he's in a

 7    relationship with a young lady named Joann Lietzau, and I

 8    would ask that Ms. Portz's name be replaced by Ms. Lietzau's

 9    name be replaced name in the report for visiting purposes

10    when Mr. Knutson goes into custody.

11              Number two --

12              THE COURT:  Hold on for a minute.  Any objection

13    to that?

14              MR. DUNNE:  No, Your Honor.

15              THE COURT:  Any objections from probation?

16              PROBATION OFFICER SMITH:  No, Your Honor.

17              THE COURT:  All right.  Let's make that change.

18    Go ahead.

19              MR. BRINK:  There are five sealed documents on the

20    docket sheet.  And we are very concerned lest someone draw

21    the wrong inference from those sealed documents.  Three of

22    them relate to the government's submission for sentencing

23    purposes regarding the Bureau of Prisons mental health

24    examination, and Mr. Dunne felt constrained to ask that that

25    be sealed because it dealt with mental health issues.  We

1   have no objection to unsealing those documents, and they are

2   docket number 91, 92, and 93.

3           And the other two documents are docket 100, which

4   is a letter from Kim Herman to the Court regarding

5   sentencing.  And docket 101, which is a letter from the

6   defendant's mother Jeanne Riege, and we would ask that those

7   two documents be unsealed as well.

8           THE COURT:  Any objections from the government?

9           MR. DUNNE:  No, Your Honor, and to I just want to

10  clarify.  So the three documents that Mr. Brink referred to

11  regarding the government's filing is a motion to seal and an

12  order to seal and our sentencing memorandum is absolutely

13  right.  It's not that I felt constrained.  I think those are

14  the rules to follow when you're talking about mental health

15  issues and that's why it was filed under seal.  If

16  Mr. Knutson has no objection to unsealing that document, I

17  don't have an objection either.

18          THE COURT:  Dockets numbers 91, 92 and 93 will be

19  unsealed.

20          Let's deal with docket number 100 and 101.  Any

21  objections to those?

22          MR. DUNNE:  No, Your Honor.

23          THE COURT:  Any objections to those being unsealed

24  from probation?

25          PROBATION OFFICER SMITH:  No, Your Honor.

1          THE COURT:  All right.  Docket number 100 and 101

2     will be unsealed.  So it's clear, five docket numbers will

3     be unsealed.  Docket number 91, 92, 93, 100 and 101.

4          Mr. Brink?

5          MR. BRINK:  And the last of those housekeeping

6     matters, Your Honor, is that *Setser*, spelled S-E-T-S-E-R,

7     *Setser v. The United States*, the citation for which is 566

8     U.S. 231, 2012 is the year, gives you the authority to make

9     whatever sentence you issue today concurrent with

10    anticipated sentences that Mr. Knutson will face in State

11    Court.  He has pending in Lake County and Scott County,

12    Stearns County and Ramsey County, he has matters pending,

13    and we anticipate that those will be resolved before he goes

14    into the Bureau of Prisons custody.  And I would ask that

15    you make whatever sentence you issue today to run

16    concurrently with those matters.

17         THE COURT:  All right.  Any objections from the

18    government?

19         MR. DUNNE:  Yes, Your Honor.  I haven't read this

20    case that Mr. Brink cites, and I think I should have had the

21    opportunity to read it so I could guide the Court in what

22    the applicable law is.  In my experience, and this is a 2012

23    case, which is surprising to me, it's the law that you can't

24    make a sentence concurrent to something that hasn't happened

25    yet.  And so whatever the State Court wants to do with those

1    four pending cases, it's in reaction to the sentence that

2    you impose because there's nothing to make it concurrent

3    with at this point.

4              THE COURT:  Right.  Do you have a copy of that

5    case, Mr. Brink?

6              MR. BRINK:  I do.

7              THE COURT:  We're printing it off now.

8              MR. BRINK:  Here it is.

9              MR. DUNNE:  Your Honor, I don't have time to read

10   this in a minute and give you an analysis.

11             THE COURT:  Have a seat.  I'm going to read it too

12   so.

13             (Pause for document reading.)

14             THE COURT:  All right.  Anything for the

15   government?

16             MR. DUNNE:  Yes, Your Honor.  First of all, I mean

17   what the case holds is that the District Court has the

18   discretion to impose a sentence consecutive not concurrent,

19   but the distinguishing characteristic about this case and

20   that included in *Setser v. United States*, and the case at

21   bar, Setser dealt with a probation violation based on the

22   federal offense.  Setser was on probation with the state,

23   and it was his federal charge that served as the basis of

24   that probation violation.  That's a completely different

25   matter here.

1          I can understand the argument if one of those four

2     pending cases against Mr. Knutson was that this federal

3     charge was a revocation of that, but they're four completely

4     unrelated state charges.  One is for domestic assault by

5     strangulation.  One is for an aggravated robbery.  One is

6     for threats of violence to others, and the other is another

7     domestic assault.  It has nothing to do with these federal

8     charges, and I would adamantly oppose the request by the

9     defendant.

10          THE COURT:  Anything further, Mr. Brink?

11          MR. BRINK:  No, thank you, Your Honor.

12          THE COURT:  Okay.  Anything else you wish to say

13     on behalf of your client?

14          MR. BRINK:  Yes, there is, Your Honor.

15          Mr. Knutson is facing a statutory sentence of ten

16     years to life.  His guidelines, as the Court has pointed

17     out, are 235 to 293 months.  And we have asked the Court

18     because of his mental and emotional conditions and because

19     of his drug and alcohol dependence for the Court to depart

20     downward.  We believe that this is borne out by both the

21     forensic evaluation that was done by the Bureau of Prisons

22     in which the evaluator described abuse of the defendant at

23     the young age of ten years from his mother's boyfriend.

24     Several head injuries that he suffered as a child, that his

25     mental health issues surfaced at age 8 or 9 with treatment

1   for attention deficit, hyperactivity disorder and bipolar

2   disorder.

3          Twice he was hospitalized for behavioral problems.

4   He's been prescribed multiple psychotropic medications

5   throughout his lifetime including anti-psychotics,

6   anti-depressants, mood stabilizers and psycho stimulants.

7   He suffered alcohol and substance abuse beginning at age 12.

8   This included alcohol, cannabis, methamphetamine, crack,

9   benzodiazepines, and opioids, all of which went untreated,

10  and he continued this behavior right up until he was

11  arrested for this case.

12          While he was being evaluated by the Bureau of

13  Prisons for his mental health, he attempted suicide by

14  ingestion of razor blades, batteries and a nail clipper.

15  The Bureau of Prisons psychologist diagnosed him as having

16  an extensive history of substance abuse with alcohol use

17  disorder, cannabis use disorder, stimulant use disorder, and

18  opoid disorder.  Her final diagnosis was unspecified bipolar

19  disorder.

20          In 2010, he was hospitalized at St. Paul Regions

21  Hospital for seven days with delusions and visual

22  hallucinations and referred to Stearns County for

23  commitment.  He was diagnosed with schizophrenia,

24  unspecified bipolar disorder, and various controlled

25  substance addictions.

1           He is sorely in need of major psychological and

2     drug abuse intervention.  And while the guidelines provide

3     that these matters do not automatically create a ground for

4     departure, they are things that you can and should consider

5     in fashioning a sentence.  He's basically been a drug addict

6     and mentally ill since about the age of ten years old.

7           And as the Court knows, Section 3553(a) restricts

8     the Court to a sentence sufficient but not greater than

9     necessary to comply with the purposes of Section 3553(a),

10    which I know the Court is conversant with.  In my judgment,

11    a sentence to the mandatory minimum ten years imprisonment

12    followed by a suitable period of supervised release to

13    afford the defendant treatment for his mental and emotional

14    issues and substance abuse satisfies all the criteria of

15    3553(a).

16          And there's one more issue, Your Honor.  That is

17    that if he were to be sentenced for a mixture of

18    methamphetamine, his guidelines would be 151 to 188 months.

19    And the *Kimbrough* case, *Kimbrough v. The United States* found

20    at 552 US 85 2007, provides that where there is not

21    empirical evidence to justify a sentencing guideline

22    provision, the District Court has the authority to grant a

23    variance to the defendant based on the Court's disagreement

24    with the particular guideline provision that's involved.

25    And I believe -- I don't think it's disputed that there is

1    no empirical evidence to justify the methamphetamine

2    guidelines, which now make a pound -- 1.5 kilograms of

3    methamphetamine actual is treated the same way as

4    8.4 kilograms of crack, 150 kilograms of powder cocaine, and

5    30 kilograms of heroin, and there doesn't seem to be any

6    justification for how they arrived that methamphetamine

7    should carry such a much heavier sentence than the other

8    drugs that I mentioned.

9            And people used to make the argument that the

10   purity of the methamphetamine bespoke a proximity to the

11   source of the methamphetamine, but that's been debunked

12   because most of the methamphetamine in Minnesota is over

13   90 percent pure.

14           And another problem is whether it's tested for

15   purity or not is purely arbitrary.  I don't mean that in a

16   perjorative sense.  I mean it's up to the local authority,

17   the local Assistant United States Attorney, and the local

18   law enforcement agency as to whether or not they want to

19   test for purity.  As far as I know, there aren't any

20   standards to guide them in making that decision.  The local

21   laboratory may be too busy to do it or the defendant may

22   plead guilty before it can be done, so it puts the defendant

23   in really a limbo land as to whether or not he is subjected

24   to the vastly increased penalties for pure methamphetamine

25   or a mixture.  And in this case, that's a nine year swing

1    from the sentence for a mixture to the sentence for actual

2    meth.

3            And, finally, Your Honor, there was some mention

4    in the Bureau of Prisons forensic evaluation about Mr.

5    Knutson exaggerating symptoms.  But local psychologist

6    Dr. Mary Kinney, who also examined Mr. Knutson, pointed out

7    in her report that that's one of the symptoms of his mental

8    health issues is exaggeration of symptoms.  It's part of the

9    illness, so I don't think that you should draw any adverse

10   inference from that.

11           And, finally, Mr. Knutson would like to be

12   designated to either Oxford, Wisconsin; or to Greenville,

13   Illinois, Your Honor.  With that, I thank you.

14           THE COURT:  Dealing with the 152; 151 to 188

15   sentence, Mr. Brink, you're asking the Court to go to 120.

16           MR. BRINK:  I would ask you to go to 120, but 151

17   is better than where I am right now.

18           THE COURT:  All right, thank you.

19           Todd, this is your opportunity to speak to me.

20   You have an absolute right to talk to me.  You have an

21   absolute right to tell me anything that you want to tell me

22   about yourself, about this offense or anything else that you

23   think I should know before I sentence you.  Please talk to

24   me.

25           THE DEFENDANT:  Hi, Mr. Davis.

1          THE COURT:  Speak in to microphone.  Pull the

2     microphone up.

3          THE DEFENDANT:  My name is Todd Knutson.  I grew

4     up in St. Paul, Minnesota.  Kind of grew up all over.

5          THE COURT:  Why don't you go to the microphone

6     that Mr. Brink has because for some odd reason that one

7     works better.

8          THE DEFENDANT:  I kind of grew up all over the

9     years.  Like it's already known to you, through my drug use

10    and everything else, I started out young.  You know I've

11    been struggling with a lot of problems throughout my whole

12    life.  I want to take this time to apologize.  I don't even

13    know how my life got to where it got.  Really I don't.  The

14    understanding of where my life started and to where I'm at

15    today just doesn't make any sense to me.

16          I got all my beautiful family here.  I'm wrecking

17    their lives through what I got going on, and it doesn't make

18    any sense to me.  I can only imagine what it looks like to

19    you looking in.  The Sherburne County reports and everything

20    else, it doesn't make any sense.  Why doesn't this guy

21    straighten up?

22          I've been through, I've been through it time and

23    time again.  And, God, I don't know.  I need help.  I

24    definitely need help.  And I'm looking to you for that.  And

25    I just ask for forgiveness and leniency from the Courts.

1  And I don't know, the drugs just get ahold of me where I was

2  focused on everything.  I was focused on life.  I was

3  focused on who I am.  I get caught up in this paranoia.

4  This unreal paranoia.  I mean it's real.  It's real to me.

5  I mean I struggle with stuff.  I struggle with, with a lot

6  of things that probably ain't even there, but at the time I

7  believe they're there.

8          And like I wrote to you in the letter, when I was

9  requesting to tell you I just want to be able to have a

10  chance to get out and still be a productive member of

11  society, and get out from all my kids sitting over there,

12  they're all my kids, and they're all going to be old enough

13  as it is when I get out.

14          I messed up, and I messed up big.  I just, I just

15  need one chance, one chance, you know what I'm saying?  And

16  with that, I'll end.

17          THE COURT:  Anything else, sir?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  All right.  Anything for the

20  government?

21          MR. DUNNE:  Yes, Your Honor.

22          THE COURT:  Is your microphone on?

23          MR. DUNNE:  I think it is.  Is it now?

24          THE COURT:  It is.

25          MR. DUNNE:  When I get ready for a sentencing, the

1    procedure that I go through is I look at the factors in the

2    case, and I compare them to the sentencing factors that are

3    set forth in 3553(a).  And the case factors that I review

4    are a defendant's criminal history and, specifically, the

5    acts that the defendant is accused of engaging in to compile

6    that criminal history.  I look at the offense conduct, the

7    entire course of conduct, and then I look at the 3553(a)

8    factors to determine whether in my experience working in the

9    criminal justice system, did the guideline range get it

10   right?  Is it too heavy or is it too light?  And I

11   respectfully submit to the Court that in this case, it got

12   it just right, and I'll talk about the factors that I

13   reviewed.

14        First of all, the criminal history.  It's

15   astonishing.  It's long.  It's consistent.  It goes back 20

16   years.  It includes convictions for repeated acts of

17   violence and assaultive behavior, multiple domestic

18   assaults, multiple assaults, multiple terroristic threats,

19   multiple fleeing from police, attempted arson, multiple

20   thefts, burglary, criminal vehicular operation and drugs.

21        He has an astonishingly high 38 criminal history

22   points that are three times the necessary amount to put

23   someone in a Category 6, which is 13 points.  He has four

24   pending state matters that also are crimes of violence.  So

25   this pattern that was built up over the last 20 years has

1    only continued.  That's the criminal history component.

2            But then I looked at the offense conduct, and

3    Mr. Brink talked about the methamphetamine and the three

4    pounds of methamphetamine, and as an aside, I will tell you

5    I don't know where the 151, 188 number comes up with.  Does

6    it take into consideration there were seven guns?  Does it

7    take into consideration that there's a Criminal History

8    Category 6 with 38 criminal history points?  I don't know

9    where the numbers come up with.

10           But let's look at the offense conduct because in

11   addition to the three pounds of methamphetamine, there's

12   seven guns.  Four of which were stolen, one SKS assault

13   rifle, one MAC-10 machine gun, numerous rounds of

14   ammunition, magazines for an assault rifle that were taped

15   together to enhance the ability to shoot multiple rounds, a

16   bulletproof vest, a surveillance system both inside and

17   outside the residence.

18           Law enforcement, and I have an FBI agent in the

19   courtroom right now was so concerned about their own

20   physical safety that they set up on the house on Arkwright

21   waited for Mr. Knutson to leave on his motorcycle before

22   they executed the warrant because they didn't want a stand

23   off or to put themselves in danger.

24           It's serious criminal conduct to go along with the

25   significant criminal history.  So I look at the 3553(a)

1    factors to compare them to those case factors that I just

2    talked about.  And the four factors that have particular

3    relevance to me, the nature of the offense, the need for the

4    sentence to reflect the seriousness of that offense, the

5    criminal history of the defendant, and the need to protect

6    the public from further criminal activity.

7            And so when I weigh those case factors, the long,

8    significant, violent, assaultive criminal history, the

9    offense conduct involving an armed fortress, with those four

10   sentencing factors that I just talked about, a guideline

11   range in the plea agreement is absolutely appropriate in

12   this case.

13           I just also want to say one last thing about the

14   psychological components of this case.  You know, when I got

15   Dr. Kinney's report, I initially was going to object.  It

16   was late.  There's no notice.  The forensic report from the

17   Bureau of Prisons was dated in September of 2018.  This is

18   March of 2019.  The date on the report is March 5th.

19   Mr. Brink doesn't even submit it until after hours on

20   Friday, March 22nd, a week before the sentencing.  And so I

21   was going to object, I wanted more time.

22           But then I read the report, I don't blame

23   Mr. Brink for doing that.  When there's a BOP forensic

24   report that accuses your client of malingering and

25   exaggerating symptoms because they want reduced consequences

1   for their criminal behavior, I'm going to get an independent

2   psychiatric evaluation as well because I don't want to incur

3   the wrath of a judge looking at that diagnosis of

4   malingering.

5          When then when I read Dr. Kinney's report, she

6   said the same thing, he's malingering.  Now she comes up

7   with multiple reasons for malingering, including the

8   diagnosis of the forensic evaluator for the Bureau of

9   Prisons, but the fact of malingering is there.  And so if

10  you were to say what effects does this have on the sentence

11  imposed?  The answer is none.  It's malingering.  It's based

12  on a false premise.  It's based on a diagnosis that is in

13  doubt is in question.

14         Dr. Feldman, who didn't just visit with

15  Mr. Knutson for an hour and read one report to come up with

16  a valuation, it was a report that was done after 30 days of

17  observation, of significant testing, of reviewing all

18  criminal history records, of reviewing all mental health

19  records, of reviewing all offense conduct records,

20  Dr. Feldman says, "the defendant did not demonstrate any

21  active symptoms of a major psychiatric disorder that would

22  effect his sentence.  It was likely that the defendant was

23  malingering psychiatric and a cognitive impairment in an

24  effort to receive a reduced or no legal repercussions for

25  his criminal behavior."

1      And this is the one I'm worried about, Dr. Feldman

2  concludes that the defendant's mental state is relatively

3  stable.  His psychiatric prognosis is favorable.  However,

4  because his history of criminal activities and substance

5  abuse place him at a risk of recidivism for such type of

6  behaviors.

7      And when you look at the 3553(a) factors, one of

8  those factors is the need to protect the public.  That's my

9  job as a prosecutor and that's why I feel the guideline

10  range lower than set forth in the presentence report, but

11  that was my plea agreement and my error.  That's an

12  appropriate guideline range to impose in this case.  Thank

13  you.

14      THE COURT:  Thank you.  On January 11, 2018, the

15  defendant pled guilty to possession with intent to

16  distribute 500 grams or more of methamphetamine mixture, in

17  violation of Title 21, United States Code Section 841(a)(1)

18  and (b)(1)(a).  It is considered and adjudged that the

19  defendant is guilty of that offense.

20      The Court has read the Presentence Investigation

21  Report.  The Court has read all the medical documents that

22  have been submitted to the Court.  The Court has read all

23  the pertinent and all the legal arguments that had been

24  submitted to the Court by both counsel.  The Court has read

25  all the pertinent United States Supreme Court decisions, and

1    I read one this morning.  And all the Eighth Circuit Court

2    of Appeals decision and other Circuit Court decisions that

3    would pertain to this case.

4         The Court has also reviewed the defendant's

5    criminal history very closely.  And the Court in its

6    reasoned opinion did not go with the higher guidelines and

7    will go with the plea negotiations, which, as the government

8    has stated, is in error.  And the custody range under the

9    guidelines that were presented to the Court through the plea

10   agreement was 235 to 293.

11        And, of course, the Court will apply the factors

12   under Title 18, Section 3553(a) in sentencing the defendant

13   here today, and the Court will determine and give the proper

14   sentence that is sufficient but not greater than necessary

15   in sentencing this defendant.

16        The defendant is hereby committed to the care and

17   custody of the Bureau of Prisons for a term of 235 months.

18   The Court will recommend that he be housed in a

19   penitentiary, whether or not that's Leavenworth, Kansas;

20   Oxford, Wisconsin; or Florence, Colorado.  There's no fine

21   imposed.

22        Dealing with the preliminary order of forfeiture,

23   have I signed that?

24        THE CLERK:  I think so.

25        MR. BRINK:  Yes, a preliminary order has been

1    signed.

2             THE COURT:  All right.  The defendant is sentenced

3    to a term of five years supervised release.  The following

4    mandatory conditions are applicable:

5             The defendant shall not commit any crimes,

6    federal, state, or local.

7             The defendant shall not unlawfully possess a

8    controlled substance.  The defendant shall refrain from any

9    unlawful use of a controlled substance.

10            The defendant shall submit to one drug test within

11   15 days of release from imprisonment and at least two

12   periodic drug tests thereafter.

13            The defendant shall cooperate in the collection of

14   DNA as directed by the probation officer.

15            Next, the defendant shall abide by the standard

16   conditions of supervised release that have been adopted by

17   this Court, including the defendant must report to the

18   Probation Office in the federal judicial district where the

19   defendant is authorized to reside within 72 hours of the

20   defendant's release from imprisonment, unless the probation

21   officer instructs the defendant to report to a different

22   Probation Office or within a different time frame.

23            And the defendant shall not own, possess or have

24   access to firearm, ammunition, destructive device or any

25   other dangerous weapon.

1           Next, the defendant shall comply with the

2     following special conditions:

3           The defendant shall abstain from the use of

4     alcohol and other intoxicants and not frequent

5     establishments where the primary business is the sale of

6     alcoholic beverages.

7           Next, the defendant shall submit his person,

8     residence, office, vehicle or any other area under the

9     defendant's control to a search conducted by a United States

10    probation officer or supervised designee at a reasonable

11    time and in a reasonable manner based upon reasonable

12    suspicion of contraband or evidence of a supervision

13    violation.

14          The defendant shall warn any other residents or

15    third parties that the premises and areas under the

16    defendant's control may be subject to searches pursuant to

17    this condition.

18          Next, the defendant shall participate in a

19    psychological and/or psychiatric counselling or treatment

20    program as approved by the probation officer.

21          Further, the defendant shall contribute to the

22    costs of such treatment as determined by the Probation

23    Office copayment program not to exceed the total costs of

24    treatment.

25          Next, the defendant shall reside for a period of

1    120 days in a residential re-entry center as approved by the

2    probation officer and shall observe the rules of that

3    facility.

4         And, finally, there's a one hundred dollars

5    special assessment payable to the Crime Victims Fund, which

6    is required by statute to be paid immediately.

7         The Presentence Investigation Report will be

8    amended by those corrections that I've made.  And also in

9    the Presentence Investigation Report, I want a paragraph

10   dealing with the new violation dealing with drug use while

11   he was in Sherburne County.

12        PROBATION OFFICER SMITH:  Yes, Your Honor.

13        THE COURT:  Now, sir, the most time that you've

14   ever spent was 51 months in prison.  And now I'm giving you

15   235 months, and it's probably not comprehensible to you.

16   I've gone over every inch of your Presentence Investigation

17   Report.  The violence that are involved in your cases

18   compels me to protect the public.

19        THE DEFENDANT:  Two cases I've ever had that were

20   violent.

21        THE COURT:  Well, you want to tell me that you

22   took a sledge hammer to somebody's head?

23        THE DEFENDANT:  No, I didn't take a sledge hammer

24   to nobody's head.  What I pled out to I used my fist.  I got

25   into a fight.  I tried to argue that in my PSI report, but

1    it didn't get clarified.  If he would got hit in the head

2    with a sledge hammer, he would be dead.

3              THE COURT:  The sentence is 235 months in prison.

4              MR. DUNNE:  Your Honor, the government would move

5    to dismiss the remaining counts of the indictment.

6              THE COURT:  Sir, you have a right to appeal my

7    sentence to the Eighth Circuit Court of Appeals, which sits

8    in St. Louis, Missouri.  That appellate court reviews all my

9    sentences to make sure that I follow the law and the

10   Constitution in sentencing you.

11             You have ten days or is it 14?  I can't remember.

12             THE CLERK:  14.

13             THE COURT:  14 days to file that Notice of Appeal

14   to the Court of Appeals.  I will appoint Mr. Brink as your

15   attorney, and I'm ordering him to file that notice so your

16   appeal rights are protected.  Once that is done, you have a

17   right to hire your attorney or represent yourself or

18   continue with Mr. Brink as your attorney and that decision

19   is up to you on your appeal.  Because the sentence is so

20   substantial, I want to make sure that your appeal rights are

21   protected.

22             As to the defense motion to make my sentence

23   concurrent to any pending sentences, the Court will deny

24   that.  It's just one issue I don't need to come back to me

25   dealing with that.  And it's my 36 years of experience as a

1    judge, State Court, once they see 235 months, they're not

2    going to give a consecutive sentence, and so there's no need

3    for the Court to muddy the issue dealing with that.

4              Anything further for the government?

5              MR. DUNNE:  No, Your Honor.

6              THE COURT:  All right.

7              MR. BRINK:  Excuse me, Your Honor.

8              THE COURT:  Excuse me, the motion to dismiss those

9    counts are granted if I didn't say that.

10             Yes, Mr. Brink?

11             MR. BRINK:  I believe the law requires me to ask

12   you, Your Honor, you mentioned as a 3553(a) factor,

13   protection of the public.  Are there any other 3553(a)

14   factors upon --

15             THE COURT:  All the -- I can address all of them,

16   and I do in my written memorandum, but I wanted to emphasize

17   the protection of the public.  But I should, so there's no

18   confusion with the Eighth Circuit, I'll go through it.

19             The Court has reviewed the factors under 3553(a),

20   and that's the nature and circumstances of the offense, and

21   the history and characteristics of the defendant.  The Court

22   has reviewed to reflect the seriousness of the offense, to

23   promote respect for the law and to provide just punishment

24   for the offense, to afford adequate deterrence to criminal

25   conduct, and to protect the public from further crimes of

1    the defendant, to provide the defendant with needed

2    educational, vocational training, medical care or other

3    correctional treatment in the most effective manner, and to

4    avoid unwarranted sentencing disparities among defendants

5    and to provide restitution to any victims of this offense.

6              And if I've missed any other sections of 3553(a),

7    they will be covered in my written memorandum.

8              MR. BRINK:  Your Honor, could I ask you to

9    recommend the Residential Drug Abuse Program for

10   Mr. Knutson?

11             THE COURT:  So ordered.  The Court will recommend

12   that the Bureau of Prisons evaluate him to see if he's a

13   candidate for the DAP program, and if he is, I would hope

14   that he would enter into that program and successfully

15   complete it.

16             MR. BRINK:  Thank you, Your Honor.

17             THE COURT:  Anything else for the defense?

18             MR. BRINK:  No, Your Honor.  Thank you.

19             THE COURT:  Remanded to the custody of the United

20   States Marshal.

21             THE CLERK:  All rise.

22                  (Court adjourned at 12:51 p.m.)

23

24                       *      *      *

25

1

2                          REPORTER'S CERTIFICATE

3              I, Maria V. Weinbeck, certify that the foregoing is

4      a correct transcript from the record of proceedings in the

5      above-entitled matter.

6

7                    Certified by:  *s/ Maria V. Weinbeck*

8                                Maria V. Weinbeck, RMR-FCRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25